DANIEL P. YORK, Plaintiff-Appellee, *v.* GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant-Appellant.

First District (1st Division)   No. 78-844

Opinion filed April 30, 1979.

James R. Gannon and Paul V. Esposito, both of Lewis, Overbeck & Furman, of Chicago, for appellant.

Francis H. Monek and John J. Naughton, both of Henslee, Monek & Henslee, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff Daniel P. York filed suit against his employer, defendant Grand Trunk Western Railroad Company for injuries sustained while working for defendant as a brakeman. Count I was a FELA action brought by plaintiff for injuries he received while attempting to release a handbrake on a caboose. Count II was brought pursuant to FELA and the Federal Safety Appliance and Equipment Act for injuries plaintiff sustained while attempting to uncouple railroad cars. A jury subsequently awarded plaintiff $120,000 for count I and $80,000 for count II. Defendant appealed.

On appeal defendant argues that the trial court erred (1) in denying its motion in limine regarding plaintiff's ability to work as a brakeman; (2) in allowing plaintiff to testify concerning certain statements made by an examining physician; (3) in allowing the jury to award damages for future wage losses; (4) in allowing the jury to award damages for future pain and suffering; and (5) that the jury's award of damages was excessive.

We affirm.

On August 7, 1973, plaintiff Daniel P. York filed a complaint against his employer, defendant Grand Trunk Western Railroad Company, for injuries sustained in the course of his employment. The suit was filed pursuant to the Federal Employers' Liability Act (FELA) and alleged that plaintiff, a brakeman, was injured on October 15, 1970, as he attempted to release a handbrake on a caboose. Plaintiff alleged that as he attempted to board the caboose, the train unexpectedly moved, causing him to lose his balance and injure his back.

Plaintiff subsequently amended his complaint and added count II which alleged that on August 4, 1973, plaintiff was injured while attempting to uncouple a cut of cars from the train. Count II was brought pursuant to both the Federal Employers' Liability Act and the Federal Safety Appliance and Equipment Act. According to plaintiff, the

uncoupling lever failed to function properly and as a result, he was forced to run alongside the moving cars in an effort to uncouple them. As he did, his feet became entangled in metal banding lying alongside the track, causing him to fall and injure his back.

Prior to trial, defendant filed a motion in limine seeking to bar testimony that plaintiff was physically able to return to work as a brakeman. The motion recited that following treatment for his injury, a railroad physician examined plaintiff and found him physically unfit to work as a railroad brakeman. Plaintiff requested a physical re-examination by a team of doctors pursuant to his union contract with defendant. By a majority decision, the examining physicians found plaintiff physically unfit to work as a brakeman. Defendant's motion in limine reciting these facts was subsequently denied by the trial judge.

During the trial, plaintiff first testified regarding the October 15, 1970, accident. He stated that after the accident, the trainmaster sent him to a nearby hospital where he was given a sleeping pill and was instructed to visit "company Dr. Allen." He further testified that several days later, his wife telephoned Dr. Kingsley, whom plaintiff also referred to as a "company doctor." Defendant objected to plaintiff's reference to Dr. Allen as a "company doctor" and the objection was sustained. Defendant also objected to plaintiff testifying as to any statements made by Drs. Allen and Kingsley on the grounds that any statements would be hearsay. The trial court, however, overruled the objection on the grounds that the physicians were defendant's agents and therefore, their statements were admissible as admissions against interest.

Continuing his testimony concerning the October 15, 1970, accident, plaintiff stated that Dr. Allen instructed him to enter the hospital. Upon his release two weeks later, he was given a back brace. Plaintiff returned to work but ceased working and eventually re-entered the hospital when he encountered back problems a few days later. There, plaintiff was given a myelogram and placed in traction. According to plaintiff, Dr. Allen stated that he was dehydrating and needed intravenous feeding. He also stated that plaintiff would have to exercise for the remainder of his life. The defendant objected that this testimony was hearsay, but the objection was overruled.

Plaintiff returned to work and worked steadily until April 1971, when his back pain became more intense. He attempted to see Dr. Allen, who stated that defendant was "getting nervous" about allowing him to treat plaintiff. Allen further stated that in the future, he would only treat plaintiff as a private patient and only with defendant's permission.

Plaintiff next testified as to the August 4, 1973, accident in which he tripped over the banding wire while attempting to uncouple some train cars. While he continued to work after the accident, he experienced back

pain for the next several days. He stated that by August 10, 1973, he was experiencing severe pain in his leg. When he went to see Dr. Allen, office personnel told him that Dr. Allen would not see him without defendant's permission. Plaintiff then went to Chicago where doctors gave him a myelogram. Later that month, plaintiff underwent surgery for the removal of two herniated discs.

In September 1974, plaintiff's physician released him as a patient and stated that he could return to work as a brakeman. Pain in plaintiff's back was diminishing. Defendant, however, refused to re-employ plaintiff as a brakeman, finding him physically unfit for that job. Plaintiff testified that he was rehired as a groundskeeper, a job that was physically more demanding than that of a brakeman. However, plaintiff testified that he was terminated from this job on August 13, 1976, when defendant abolished the position.

Plaintiff further testified that after defendant eliminated the groundskeeper job, defendant offered him other jobs such as fireman. However, plaintiff refused these offers because the jobs would require either moving from his Battle Creek, Michigan, home, a reduction in pay, loss of his 14½ years brakeman's seniority and security, or pass a physical examination.

During the trial, Dr. Gerald Rabin one of plaintiff's physicians, also testified. He stated that it was he who removed the herniated discs from plaintiff's spine and fused the vertebrae surrounding the discs. He further testified that in his opinion, the spinal fusion was successful and that plaintiff could perform the duties of a brakeman.

During defendant's case-in-chief, Dr. Robert Thompson testified that he examined plaintiff and found the spinal fusion to be ineffective. He concluded that plaintiff was therefore physically unfit to work as a brakeman. Dr. Vincent Gallant and Dr. N.S. Zeitlin later took the stand and concurred with Dr. Thompson's conclusions. Dr. Zeitlin added that excessive movement and lifting would be likely to cause further back problems for plaintiff.

At the conclusion of the trial, the jury returned a verdict in plaintiff's favor. They awarded him $120,000 under count I for the October 15, 1970, accident and $80,000 under count II for the August 4, 1973, accident. Defendant appealed. On appeal defendant does not deny liability or the sufficiency of the evidence, but rather, cites various errors as a basis for reversal.

Defendant first argues that the trial court erred in denying its motion in limine to exclude all evidence pertaining to plaintiff's physical ability to resume work as a brakeman. Defendant argues that under the Railway Labor Act (45 U.S.C. §151 et seq. (1976)), the issue of plaintiff's ability to work as a brakeman could not be "litigated" in the trial court since that

issue was already decided by a team of physicians at plaintiff's request, pursuant to the Railroad Union's Yard Agreement, Rule 31. Further, defendant cites *Gunther v. San Diego & Arizona Eastern Ry. Co.* (1965), 382 U.S. 257, 15 L. Ed. 2d 308, 86 S. Ct. 368, for the proposition that whether a railroad employee is physically qualified for a particular position is a "minor dispute" under the Railway Labor Act and therefore properly resolved before the National Railroad Adjustment Board and not a court of law.

■■ We disagree. During the trial plaintiff was not attempting to relitigate the issue whether he was physically fit to return to work as a brakeman. Rather, plaintiff was merely establishing his physical condition for the purpose of establishing damages. In order for the jury to ascertain plaintiff's damages, they had to be apprised of the condition of his back. Plaintiff was therefore justified in presenting evidence relevant to that issue even though some of that evidence may have contradicted the finding of the team of physicians that concluded that plaintiff was not physically fit to return to work as a brakeman.

Furthermore, defendant's reliance on *Gunther* is misplaced; *Gunther* is distinguishable. That case involved a proceeding brought pursuant to the Railway Labor Act by an employee who claimed he was wrongfully discharged for medical reasons. It was not a FELA or Federal Safety Appliance and Equipment Act action which is based on negligence, but rather a labor dispute which expressly required utilization of the Railroad Adjustment Board. *Gunther*, therefore, has no relevance to the case at bar, since we are not dealing with the Railway Labor Act.

Defendant next argues that the trial court committed reversible error by allowing plaintiff to testify as to certain hearsay statements allegedly made by Dr. Allen while examining plaintiff. During the trial plaintiff testified that Dr. Allen allegedly told him that he was dehydrating and needed intravenous feeding, that he had to exercise for the rest of his life, and that he could return to work only if he wore a back brace. Defendant argues that these statements were hearsay and were improperly used to establish plaintiff's injuries. Defendant also finds as impermissible hearsay plaintiff's testimony that Dr. Allen stated that defendant was "getting nervous" about treating him. Defendant believes that this statement portrayed defendant in an unfavorable light.

■ We find it unnecessary to determine whether these statements were hearsay since they were fairly cumulative of other testimony and therefore did not prejudice defendant's case. During the trial, Dr. Thompson, Dr. Gallant, and Dr. Zeitlin all testified that plaintiff was physically unfit to work as a brakeman due to the injury to his back. As Dr. Thompson testified, plaintiff's spinal fusion was ineffective. Dr. Zeitlin also noted that excessive movement and lifting by plaintiff would most

likely cause further back problems. These statements were made by defendant's own witnesses and though not identical to the statements allegedly made by Dr. Allen, all statements similarly indicated that plaintiff had serious back problems. We therefore cannot conclude that defendant was prejudiced by the statements allegedly made by Dr. Allen concerning plaintiff's back. As to Dr. Allen's purported statement that defendant was "getting nervous" about plaintiff's injuries, again we fail to see how defendant was prejudiced in view of the fact that the award was not excessive; a point we shall discuss below.

Defendant next argues that the trial court committed error by allowing the award of damages for future wage losses and future pain and suffering. Defendant argues that there was no evidence to support such an award.

■■ ■ We disagree. Future wage losses may comprise one element of damages. (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65.) Such losses, however, must be proven with reasonable certainty; speculation, conjecture or evidence that such losses are mere possibility is insufficient. (*Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 340 N.E.2d 106; *Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) Defendant argues that since plaintiff refused to accept other jobs offered by defendant, such as locomotive fireman, plaintiff failed to mitigate his damages; thus future wage loss should not have been compensable. However, we feel that since none of these positions paid as much per day as the brakeman's position and would have required plaintiff to lose his 14½ years seniority as a brakeman, the jury could have properly concluded that the plaintiff was justified in refusing them. As the trier of fact, the jury also may have felt that plaintiff was unfit to work as a locomotive fireman since he had to watch his posture and exercise for the rest of his life. Under these facts, we cannot say that the jury was improperly instructed to consider plaintiff's future wage losses when awarding damages.

■ We also feel that defendant's argument that the jury should not have considered plaintiff's future pain and suffering when awarding damages is equally without merit. In *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 827-28, 370 N.E.2d 826, 830, we stated:

"As we interpret the testimony, however, the physician testified that a rupture of the disc is reasonably certain to occur if sufficient trauma is exerted upon it. Thus plaintiff is required to bear the risk of the occurrence of the force and to avoid those activities which could result in trauma or force upon the disc. This, we believe, is properly compensable.

Pain and suffering and impairment of the ability to labor are

proper elements of damage in a personal injury suit. (*Haizen v. Yellow Cab Co.*, 41 Ill. App. 2d 330, 335, 190 N.E.2d 514, 516; *Chicago & Milwaukee Electric Ry. Co. v. Ullrich*, 213 Ill. 170, 172, 72 N.E. 815, 816.) Under the FELA, pain and suffering, including the inability to engage in normal pursuits and pleasures, and the impairment of earning capacity are compensable elements of damage. (*Grunenthal v. Long Island R.R. Co.*, 388 F.2d 480, 484 (2d Cir. 1968), rev'd on other grounds, 393 U.S. 156, 21 L. Ed. 2d 309, 89 S. Ct. 331; *Chesapeake & Ohio Ry. Co. v. Carnahan*, 241 U.S. 241, 60 L. Ed. 977, 36 S. Ct. 594.) This view finds support in Illinois in the case of *Donnelly v. Chicago City Ry. Co.*, 235 Ill. 35, 85 N.E. 233, where medical evidence of predisposition to injury caused by the action of the defendant was held properly admissible. Accordingly, the risk of injury is properly compensable as comprising part of the pain and suffering recovery, and can be considered in its effect on the earning capacity of the plaintiff. No error was committed in admitting the testimony."

Accordingly, in the present case the evidence also indicated that plaintiff had a "predisposition" to future back injury even though he felt fine at the time of trial. Doctors Thompson, Gallant and Zeitlin all testified that plaintiff would probably experience future back problems since his spinal fusion was ineffective. On the basis of *Harp*, we believe the jury properly considered future pain and suffering when awarding damages.

Finally, defendant argues that the jury's award of $120,000 on count I and $80,000 on count II was excessive. Defendant cites *Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 354 N.E.2d 435, where a woman received $65,000 in damages for injuries she sustained when the auto in which she was a passenger, was struck from behind by another auto. Her injuries were similar to those sustained by plaintiff in the instant case.

As quoted in *Lau v. West Town Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63, *appeal dismissed, cert. denied*, 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256 (1959), the amount of a verdict is largely discretionary with the jury and "must be examined in the light of the injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post trial motions." For this reason, it is difficult to compare one case with another and conclude that a jury award in one of them is excessive just because the award is larger than that in the comparison case. Though the instant case and *Kupcikevicius* both involve injuries to the plaintiffs' spinal discs, there are facts which support a finding of greater damages in this case. Here plaintiff sought recovery for future wage losses and future pain and suffering; there is no evidence that recovery for either of these was sought in *Kupcikevicius*. Further, plaintiff in this case was recovering for two

injuries arising out of two separate accidents. The plaintiff in *Kupcikevicius* was recovering for only one injury. Consequently, in view of these differences, we cannot see how *Kupcikevicius* can be used as a standard for determining whether the jury's award of damages in this case was excessive.

■■ Accepting the rule that assessment of damages is the preeminent function of the jury and considering the totality of the testimony regarding plaintiff's physical condition, we cannot say that the damages awarded plaintiff were excessive. Because we conclude that the award of damages was not excessive, we find it unnecessary to discuss defendant's contention that the award was the result of passion and prejudice unfairly directed at defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.