JANE W. LINDSAY *et al.*, Plaintiffs-Appellees, *v.* LLOYD J. APPLEBY *et al.*, Defendants-Appellants.

Second District    No. 79-497

Opinion filed December 23, 1980.

Robert F. Casey and George E. Krippner, both of Geneva, and Gerald M. Sheridan, Jr., of Wheaton, for appellants.

Nancy A. Gerberding and John P. Callahan, both of Brady, McQueen, Martin, Callahan & Collins, of Elgin, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendants, Lloyd Appleby and Chrysler Corporation, appeal from judgments of the Circuit Court of Kane County awarding plaintiff, Jane W. Lindsay, $265,000 as damages for injuries sustained in a motor vehicle collision and awarding her husband, Gregory Lindsay, $10,000 for loss of consortium. Defendants assign as error the denial of their motions for directed verdicts and for judgment *n.o.v.*; the admission and exclusion of evidence; certain instructions given to the jury; prejudicial argument by plaintiff's counsel; and that the verdicts were excessive.

The accident occurred at 8:15 p.m. on September 19, 1975, at the intersection of State Route 23 and Melms Road, approximately one mile north of Genoa, Illinois. Route 23 is a two-lane highway running north and south, and Melms Road has two lanes and is controlled by stop signs where it meets Route 23. The area around the intersection is flat and open. At the time in question Jane Lindsay was 25 years of age, married and had one child. She was traveling south on Route 23 at a speed of approximately 45 miles per hour, and as she approached the intersection she saw a car entering it on Melms Road to her right and about 20 feet in front of her. She applied the brakes and swerved to the left but was unable to avoid the collision. She later told an investigating officer that she remembered seeing the headlights of the other vehicle shortly before she entered the intersection and estimated it was traveling about 70 miles per hour.

The second vehicle was driven by defendant, Lloyd Appleby, an employee of Chrysler, who was acting within the scope of his employment at the time of the collision. Appleby did not testify at trial, and he subsequently pleaded guilty to a charge of failing to obey a stop sign. The investigating officer testified that Appleby's vehicle left no pre-impact skid marks on the pavement but that there were skid marks from plaintiff's vehicle on Route 23 to the north of the intersection. Appleby told the officer he traveled Melms Road daily and knew there was a stop sign at the intersection.

Although plaintiff did not recall the impact, she did remember trying to avoid it. Her next memory was of a passerby helping her out of her car and standing next to it, bleeding from her forehead and the back of her head. She felt severe head and leg pains, and she became dizzy and lost consciousness. Plaintiff had regained consciousness when the ambulance arrived but could not recall anything else until after she was in the hospital. William Sullivan, one of the paramedics who responded to the accident, testified that plaintiff was conscious during the ride to the hospital but that when they turned on the siren she went into a grand mal convulsive seizure lasting 10 or 15 minutes.

Hospital records in evidence show an admission diagnosis of a whip

lash injury to plaintiff's neck and lower back, a mild cerebral concussion and a post-epileptic seizure state. The admission records also contain a reference to her convulsion in the ambulance and a notation that she "had fits up to the age of six." While in the hospital plaintiff complained of severe headaches and dizziness, especially when she tried to stand. She was released on September 21 and returned the next day for an electro-encephalogram (EEG).

Although the doctor who administered the EEG did not testify, his report was admitted in evidence without objection and it stated in part that there was an "abnormal EEG" with "difuse spike seizure activity during sleep," which was "compatible with seizures." A second EEG was conducted on April 29, 1976, and the report noted "slightly abnormal electroencephalogram with minimal seizure activity." Jane Lindsay's husband testified that commencing in May 1977 her personality began to change; she became delusional and believed she was being persecuted. In June, while riding in an automobile, she had a grand mal seizure.

Dr. Salvatore Martinez, a psychiatrist with training in neurology testified he had diagnosed her as suffering from a manic-depressive condition, a mental illness which, in his opinion, was unrelated to the collision. He testified that during the manic stage of this condition, the brain overproduces certain chemicals which stimulate it and can result in a convulsion, especially if a person has a propensity towards seizures. After reviewing her hospital records and the EEGs, Dr. Martinez noted that there were abnormal tracings which indicated that Jane Lindsay had a potential for convulsions. Although he agreed that the entry in the hospital admission record that she had "fits up to the age of six" could suggest a predisposition towards epileptic seizures, it was his opinion the abnormal EEGs were not the result of a pre-existing condition such as a tumor or a congenital defect, but were caused by the trauma of the accident. He testified that trauma such as a concussion can cause scarring of the brain tissue, which in turn can trigger convulsive seizures and that a scarring of brain tissue creates a propensity for convulsive seizures. As brain tissue does not regenerate, Dr. Martinez concluded that Mrs. Lindsay's injury was permanent and she would have a potential for seizures during her lifetime. He further testified that any propensity towards convulsions caused by the manic-depressive condition which plaintiff developed about two years after the collision would be in addition to the seizure potential resulting from the collision. Although plaintiff might eventually show some improvement, she would require medical care for the rest of her life.

Dr. Martinez described a convulsive seizure as a symptom or an effect of an underlying brain disorder such as a birth defect, tumor or of brain tissue scars from illness or injury. Such a seizure can also be brought

on by loud noises or overconsumption of alcohol as well as the overproduction of certain chemicals in the brain of a person suffering from a manic-depressive condition. At the time of trial, Dr. Martinez had been treating Mrs. Lindsay once a month for her manic-depressive condition and for her predisposition towards convulsions which he had found resulted from the collision. As part of her treatment she must have an EEG performed every three months and the last EEG prior to trial showed the same abnormal pattern as had the previous test. Dr. Martinez further testified that his treatment of Mrs. Lindsay is a delicate task because the drug lithium carbonate which he prescribed for her manic-depressive condition causes a person to retain fluids and that fluid retention increases the potential for convulsions in a person with a predisposition towards them. To prevent seizures which might result from the injuries she received in the accident he also prescribed dilantin; this medication could not be given to her immediately after the accident because she was then pregnant and dilantin has been linked to birth defects. As dilantin must be administered to Mrs. Lindsay to control seizures, Dr. Martinez has recommended that she not have any more children. If she were to discontinue the use of this drug in order to fulfill her wish to have another child, the risk of another convulsion would be too great, since fluid retention during pregnancy, in addition to fluid retention caused by her necessary use of lithium carbonate, would increase her potential for seizures. Dr. Martinez also imposed certain limitations on her life style: no climbing ladders or other heights; to cook on the back burners of the stove to prevent burns should she have a convulsion and fall on the stove; to not operate machinery; to not drive an automobile for long distances; she may not bathe or swim alone and may not consume any products containing caffeine or alcohol.

Plaintiff testified that her use of dilantin produced unpleasant side effects, including an upset stomach if taken at times other than after eating; irritation to the gums and tongue; loss of energy and drowsiness; headaches when she doesn't wear sunglasses outside; she developed a mustache and it has adverse sexual effects upon her. In addition to these drug-related side effects she testified that she continued to have severe headaches once a week which last for approximately eight hours.

Dr. Evelyn Anderson testified as an expert medical witness on behalf of defendants. She had never examined or treated Jane Lindsay but did see her medical records. While Dr. Anderson agreed that the report of the first EEG did show tracings which could be the result of trauma, in her opinion they suggested an irritative reaction to the entire brain, such as would be caused by abnormal blood flow or encephalitis. Based upon her examination of this report Dr. Anderson concluded that the seizure activity it indicated was not related to localized brain injury as would be

the case in post traumatic epilepsy. Although she also agreed that a head injury could be severe enough to cause scarring of brain tissue, she testified that scar tissue takes two or three days to form and it would be rare to see a traumatic epilepsy attack within an hour of the injury. If there was such an attack it could not, in Dr. Anderson's opinion, be related to permanent brain scar tissue.

Defendants initially contend that the trial court erred in denying its motion for directed verdicts or for judgments *n.o.v.* on the ground Mrs. Lindsay was guilty of contributory negligence as a matter of law. It is essentially their argument that since the area at the intersection was flat and plaintiff saw the lights of an approaching vehicle, she breached her duty to watch for automobiles entering the roadway on which she was traveling.

■■ In *Thomas v. Lynch* (1978), 59 Ill. App. 3d 542, 375 N.E.2d 859, the court held that plaintiff who was driving on a preferential highway had a right to expect that a car approaching from a sideroad controlled by a stop sign would yield the right of way and would not be contributorily negligent as a matter of law for failing to avoid the collision. The court there concluded that as plaintiff had applied the brakes as soon as she discovered danger, she had acted as would a reasonable and prudent person. In the present case, when Mrs. Lindsay saw the lights of an approaching vehicle from the side road she also could properly assume that defendant's car would stop before entering the controlled intersection. Although the presence of the stop sign did not relieve plaintiff of her duty to exercise ordinary care, she could assume that the other driver would not negligently fail to reduce his speed as he approached the intersection and obey the stop sign. (*Thomas v. Smith* (1956), 11 Ill. App. 2d 310, 137 N.E.2d 117.) As Mrs. Lindsay did seek to avoid a collision as soon as she discovered danger, as would a reasonable and prudent person, under the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, defendants' motions for directed verdicts and judgment *n.o.v.* were properly denied.

■■ We consider next defendants' contentions that the trial court erred in the admission and exclusion of certain evidence. They assert it was error to admit photographs of plaintiff's vehicle which showed blood on its white roof. The admission or exclusion of photographs is within the sound discretion of the trial court. (*DeRosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 404 N.E.2d 564; *Levenson v. Lake-to-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 394 N.E.2d 1359.) A photograph will be excluded when irrelevant or immaterial to the issues being tried or when its prejudicial nature clearly outweighs its probative value. (*Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906.) In this case the

photographs were relevant evidence of the head injury sustained by Mrs. Lindsay in the collision and were properly admitted.

Defendants next assert it was error to permit William Sullivan to testify to his opinion that defendant Appleby was intoxicated at the time of the accident. Sullivan had been a qualified E.M.T. since 1972 and had operated an ambulance service in connection with his business of a funeral director for many years. At the time of trial he was coroner of DeKalb County. He testified he had observed intoxicated persons hundreds of times and that in performing his emergency ambulance duties it was often necessary to determine whether a person was injured or intoxicated. He based his opinion in this case upon a strong odor of alcohol on Appleby's breath and the fact that Appleby became uncooperative and belligerent when Sullivan tried to give him medical attention for his injuries. Sullivan observed that injured persons who are not intoxicated are also sometimes belligerent and that Appleby's attitude could have been as a result of injury, but in his opinion defendant was intoxicated.

■■ Defendants correctly note that evidence of consumption of alcohol alone is an insufficient foundation upon which to base an opinion of intoxication. (*McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 379 N.E.2d 890.) It is apparent, however, that Sullivan had a substantial basis for his opinion, in addition to the odor of alcohol which he had noted, and we conclude that the trial court did not err in this respect.

■■■ Defendants next contend that Mrs. Lindsay's testimony relating to her childhood history of convulsions should have been excluded as hearsay. While her testimony was indeed hearsay as it was based, in part, upon what her mother had told her (see *Jordan v. Morrissey* (1970), 130 Ill. App. 2d 418, 264 N.E.2d 734; *Behles v. Chicago Transit Authority* (1952), 346 Ill. App. 220, 104 N.E.2d 635), defendants opened the door to her testimony when they cross-examined other witnesses called by plaintiffs with reference to the unexplained entry in the hospital records noting that she had "fits" as a child. Mrs. Lindsay testified that as a result of an illness and high fever she had a convulsion at about six years of age. Defendants contended at trial that the collision did not cause her to be predisposed towards convulsions but that she had such a propensity before the accident. They cannot both rely upon this evidence to support their theory of the case and properly complain about its admission as hearsay. *Reed v. Knol* (1972), 7 Ill. App. 3d 163, 287 N.E.2d 238; *Smith v. Illinois Valley Ice Cream Co.* (1959), 20 Ill. App. 2d 312, 156 N.E.2d 361.

■■ Defendants next contend that Dr. Martinez should not have been permitted to testify concerning Mrs. Lindsay's manic-depressive condition which he stated was not related to the accident. They argue that proof of damages which are not proximately caused by the negligence of

a defendant is not relevant and is inadmissible. (*Bimba Mfg. Co. v. Starz Cylinder Co.* (1970), 119 Ill. App. 2d 251, 256 N.E.2d 357.) Defendants state this error was compounded when Dr. Martinez testified regarding medical expenses incurred in the treatment of Mrs. Lindsay's unrelated manic-depressive condition, the symptoms of which did not appear until about two years after the collision. It appears, however, that Dr. Martinez' testimony was relevant in view of his testimony that the injuries sustained in the collision caused her to develop a potential for seizures. He stated this potential was increased when Mrs. Lindsay later suffered a manic-depressive illness which made treatment of her accident-related condition more difficult. The testimony to which defendants object presented evidence tending to show an increased risk of further injury caused by defendant's conduct and as such was admissible as tending to show plaintiff's future damages. (*York v. Grand Truck Western R.R. Co.* (1979), 71 Ill. App. 3d 800, 390 N.E.2d 116; *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 370 N.E.2d 826.) Dr. Martinez described the relationship of the manic-depressive condition to the injuries Mrs. Lindsay sustained as a result of the collision and, in argument, plaintiff's counsel reminded the jury that Dr. Martinez had said her mental illness was not caused by the accident but was a complication effecting the injuries she had there sustained. The trial court did not err in admitting this testimony.

■■ Defendants also contend that the trial court improperly required them to utilize a hypothetical question when examining their expert witness, Dr. Anderson. This witness had neither seen nor treated plaintiff and testified from a report prepared by another physician. Plaintiff objected to a question posed to Dr. Anderson relating to the cause of certain tracings reflected by an EEG performed on plaintiff on the grounds that the witness had no basis for expressing such an opinion. The court did not rule on plaintiff's objection but commented that at some point a hypothetical question should be·used and defendants, without objection, proceeded to do so. In absence of an objection at the time of the court's suggestion, this issue will be considered waived. See *Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799, 396 N.E.2d 1333; *Morris v. Stewart* (1972), 4 Ill. App. 3d 322, 332, 280 N.E.2d 746, 754.

Defendants next contend that the court erred in giving the long form of Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971) (hereinafter cited as IPI Civil) pertaining to the issue of proximate cause, and refusing defendants' tender of the short form of the instruction, which did not include its bracketed portions. As given in this case, plaintiff's instruction No. 6 read:

"When I use the expression 'proximate cause', I mean any cause

which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

Defendants objected to this instruction at the conference on the grounds that the bracketed portion should be given only where there is also another cause, that is, a party not in the present litigation, which produced the injury. Plaintiffs argued it should be given in view of the theory of the defense that Mrs. Lindsay had a predisposition for seizures before the collision and defendant should not be relieved of liability if the accident combined with that other cause to produce her injury. Defendants argue on appeal that the instruction, as given, misled the jury to believe it could consider plaintiff's unrelated manic-depressive condition as "another cause" of her injury.

We agree that the trial court erred in giving the proximate cause instruction with the bracketed material and should have given the short form tendered by defendants. This court considered the same question in *Dolan v. Crammond* (1979), 71 Ill. App. 3d 289, 389 N.E.2d 206, and held that the proximate cause instruction deals with the *conduct* which produces plaintiff's injuries at the time of the collision and does not relate to prior or subsequent injuries sustained by a plaintiff. In this case, only the two vehicles were involved in the collision. We also noted in *Dolan* that IPI Civil No. 30.01 and No. 12.05 could appropriately be given to instruct the jury where there was evidence of a pre-existing ailment or condition. In the present case IPI Civil No. 30.01 relating to damages for aggravation of a pre-existing condition was given, but IPI Civil No. 12.05, which provides that it is not a defense if something other than defendant's negligence also may have been a cause of the injury, was not given.

While the instruction was erroneous it does not require reversal in this case. It is clear that the only injuries for which plaintiffs sought damages from defendants were those caused by the trauma to her brain in the collision which caused her to have a propensity for convulsive seizures. Defendants' argument that the jury might consider Mrs. Lindsay's manic-depressive condition as another cause of her injury is difficult to follow. Under the evidence presented, it was made clear that the condition was not related to the collision with defendant's vehicle and was not an injury caused by defendant's conduct. Plaintiff's argument to the jury also specifically informed it that the manic-depressive condition was not related to the collision. If, as defendants suggest, the jury was led by the instruction to consider plaintiff's manic-depressive condition to be an-

other cause of her injuries, such a conclusion might cause it to relieve defendant of some of the responsibility for the injury, but would not add to it. We conclude that the giving of this instruction was not prejudicial to defendants under these circumstances.

■■ Defendants also contend that there was insufficient evidence to support instructions that the jury could consider future pain and suffering, medical expenses and loss of earnings. Dr. Martinez testified that as a result of the injury to her brain sustained in the collision it was permanently scarred and, as a result, Mrs. Lindsay became subject to convulsive seizures. She will be required, for an indefinite period, to remain under medical observation and on medication in order to control the dysfunction of her brain. That treatment is complicated by the necessity she also take medication for her manic-depressive condition, unrelated to the collision, from which she suffers. Although the evidence does not apportion the $70 per hour charges made by Dr. Martinez for his treatment of Mrs. Lindsay for these two conditions, it does offer some guidance to the jury that there will be future medical expense. The evidence did disclose that an EEG costs $85 for each test. We note, too, that plaintiff's predisposition towards seizures, which was caused by the collision, complicated treatment of her unrelated manic-depressive condition. An increase in the risk of injury traceable to the conduct of a defendant is compensable as part of the recovery for future pain and suffering. (*York v. Grand Trunk Western R.R. Co.* (1979), 71 Ill. App. 3d 800, 390 N.E.2d 116.) In view of the regular medical treatments to which she must submit, the jury could conclude she will lose some time from work in the future for this purpose and sustain loss of earnings. (*De Koven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.) In addition, Mrs. Lindsay testified that she still has severe headaches once a week which last up to eight hours.

We conclude that as there was some evidence relating to future pain and suffering, medical expenses and loss of earnings that the instructions as to these elements of damages were properly submitted to the jury. We have considered all of the instructions given in this case and find they fairly informed the jury of the issues and applicable legal principles. *Woodward v. Mettille* (1980), 81 Ill. App. 3d 168, 185, 400 N.E.2d 934, 948; see also *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391, *cert. denied* (1980), 444 U.S. 1018, 62 L. Ed. 2d 648, 100 S. Ct. 671.

■■ Defendants have also contended that plaintiff made improper and prejudicial arguments to the jury. They suggest counsel, in effect, erroneously advised the jury that its response to a special interrogatory relating to contributory negligence would control the general verdict

(*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468), and also that certain other remarks were either not supported by the evidence or tended to inflame the jury against Chrysler. Defendants made no objection at trial, however, to any of plaintiff's argument and its failure to do so must be considered as a waiver of these objections on appeal. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 535, 232 N.E.2d 708, 712; *Brumley v. Federal Barge Lines, Inc.* (1979), 78 Ill. App. 3d 799, 806, 396 N.E.2d 1333, 1339; *Blyzes v. Midwest Towing Co.* (1969), 109 Ill. App. 2d 48, 248 N.E.2d 305.) We have considered the comments of which defendants now complain to determine whether they were of such a character as to deny a fair trial to defendants (see *Clemons v. Alton & Southern R.R. Co.* (1977), 56 Ill. App. 3d 328, 370 N.E. 679), and conclude they do not do so. See also *Mulvey v. Illinois Bell Telephone Co.* (1973), 53 Ill. 2d 591, 294 N.E.2d 689, and *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 384 N.E.2d 753.

Defendants' final contention is that the verdict was excessive as beyond the range supported by the evidence and demonstrated passion, prejudice and misapprehension by the jury. (*House v. Stocker* (1975), 34 Ill. App. 3d 740, 340 N.E.2d 563.) They note that there were no medical bills offered in evidence and that Mrs. Lindsay had expended less than $3,000 for psychiatric and medical care up to the time of trial. Plaintiffs argue that in view of the life expectancy of Mrs. Lindsay, her future medical costs relating to this injury will exceed $36,000. This court noted in *Fortner v. McDermott* (1971), 1 Ill. App. 3d 358, 272 N.E.2d 503, that a verdict for personal injury must be examined in light of the particular injury involved and with deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions. (See also *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63, *appeal dismissed, cert. denied* (1959), 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256; *Barango v. E. L. Hedstrom Coal Co.* (1956), 12 Ill. App. 2d 118, 138 N.E.2d 829; *Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 365 N.E.2d 1087.) In *Wood*, a verdict of $525,000 was upheld based on evidence that plaintiff had slight but permanent brain damage due to exposure to carbon monoxide, resulting in functional disabilities. As the award by the jury in that case was not so excessive as to show passion or prejudice in determining the damages, its verdict was affirmed.

■■ We have determined that the jury was properly instructed on the measure of damages and find no basis in the record for a conclusion that its determination was based on passion or prejudice against defendants. The trial court considered this question when raised by defendants in their post-trial motion and, although expressing some reservations, denied it. As a reviewing court we should not substitute our judgment for that of

the jury. (*Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413.) Defendants do not suggest that the verdict in favor of Mr. Lindsay was excessive or otherwise improper.

We conclude that the judgment of the Circuit Court of Kane County should be affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.