LA SALLE NATIONAL BANK, Guardian of the Estate of Charles Murphy, a Minor, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF CHICAGO et al., Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   No. 83—1693

Opinion filed March 12, 1985.—Rehearing denied April 16, 1985.

608

Sweeney & Riman, Ltd., of Chicago (Kevin F. Donohue and Georgene M. Wilson, of counsel), for appellant City of Chicago.

Richard S. Fleisher and Barbara J. Clinite, both of Karlin & Fleisher, Ltd., of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Charles Murphy (plaintiff), a nine-year-old third-grade student at Park Manor School in Chicago, lost his left foot and right leg below the knee on March 27, 1979, when he attempted to "flip" (climb aboard) a moving freight train owned and operated by defendant Consolidated Rail Corporation (Conrail), after gaining access to the Conrail railroad tracks by climbing through a hole in a cyclone fence constructed and maintained by defendant city of Chicago (city). Plaintiff filed a cause of action against both defendants alleging negligence and wilful and wanton conduct. Following trial, the jury returned a verdict in favor of the defendants as to wilful and wanton conduct, but found both defendants guilty of negligence, awarding plaintiff damages of $1,130,000. Determining that plaintiff had been 18% negligent, the jury accordingly reduced the damage award to $926,600.

Both defendants initially appealed the verdict against them, and plaintiff cross-appealed on the issue of comparative negligence. Subsequently, Conrail reached a settlement with plaintiff, and, by stipulation of Conrail and plaintiff, Conrail was dismissed out of this appeal.

The city now contends that: (1) as an adjacent landowner only, it

owed no duty to a minor trespasser such as plaintiff who was injured by a dangerous condition or activity located on another's property; (2) because the jury found plaintiff to be 18% comparatively negligent, it follows that plaintiff "appreciated the danger" involved in "flipping" trains and he should therefore be precluded from recovery of *any* damages; (3) the condition of city's cyclone fence was not the proximate cause of plaintiff's injuries; (4) the trial court erred in allowing plaintiff to introduce allegedly speculative testimony with regard to damages; and (5) the trial court improperly instructed the jury.

Plaintiff's two companions, Raphael Spencer and Charles Cosby, testified that, prior to the date of his injury, they had played on the tracks "about three times." On these occasions, they had entered through the same hole in the fence. The fence was taller than they were, and their only access to the track area was through the hole in the fence.

Several other students from the Park Manor School testified that they had used the same hole in the cyclone fence to gain access to the Conrail property many times, although they sometimes reached the tracks by scaling a nearby concrete retaining wall. They had played in the area about three times a week during the year and a half preceding plaintiff's accident. They testified they had seen other children "flip" trains prior to the date of plaintiff's injury, although for fear of "getting in trouble" they had made contradictory statements when questioned previously by Conrail's investigators.

Several railroad employees from the crew of the train which injured plaintiff testified. Mr. Knoll, the conductor, testified that he had worked this particular stretch of tracks for 20 years and "from time to time" had observed children playing on the right-of-way. Mr. Watson, the flagman, testified that he made approximately 200 round trips a year on the route the train was taking on the day of the accident. He had previously observed the cyclone fencing separating the Skyway and the right-of-way and had noted holes in the fence. Mr. Baines, the head brakeman, testified that he had on previous occasions seen children standing about 50 yards from the tracks. In his pretrial deposition, Baines stated that on the day of the accident, he saw the plaintiff coming up the hill towards the tracks through the hole in the fence, although at trial he did not recall making this statement.

Rosemarie Harris, who lived at 7012 St. Lawrence Avenue, testified that her house faced the Chicago Skyway and that from her front porch she was easily able to see the railroad tracks. On a number of occasions she had observed children playing in the area between the

fence and the tracks. She stated that children had easy access "because there's an opening in the fence." During March 1979, she had called the Chicago police approximately three times to report this situation.

In his cross-appeal, plaintiff alleges that the trial court erred in permitting the jury to reduce the award of damages based on the alleged comparative negligence of plaintiff since neither defendant raised the issue in their pleadings.

The issues raised in this appeal require presentation here of only a truncated version of the facts adduced during the three-week trial. In 1956, city began its plans for the road now commonly referred to as the Chicago Skyway (Skyway). As partial payment for the land which Conrail deeded to city for construction of the Skyway, city entered into a contract with the Pennsylvania Railroad (later absorbed into Conrail) under which city agreed to erect and to maintain fences. City employed an engineering firm to conduct annual inspections of the fences, and as early as 1977, reports from the engineering firm noted defects in such fences and repeatedly recommended that the cyclone fence through which the plaintiff reached the railroad track should be repaired.

Plaintiff testified: Prior to the date of his injury, he had never been told not to play in the area of the Conrail right-of-way and tracks; he had gone there once before to watch other children playing there; on the day of his injury he and two companions had gone through the hole in the fence with the intention of going to the bakery located on the other side of the tracks; when they saw a train approaching they stopped to watch it; plaintiff saw some "bigger boys jump along the side of the train and then I decided to try it"; plaintiff was able to climb on the side of the moving train and grab a ladder, but after a few seconds he lost his balance and fell; he looked down and "saw the bones in my legs" and was unable to get up.

Emil Hessert testified that he was employed by Conrail's police department since 1955. The Conrail "police blotter" reflected 34 incidents since 1975 of children being present on the railroad property in or near the area where plaintiff was injured. The Conrail "police blotter" also contained additional references to incidents reported by Skyway employees, by Skyway police and by Chicago police personnel, reflecting the presence of children and others on the right-of-way on or near the stretch of tracks where the accident occurred.

Dr. Terry Carle, co-director of the spinal care injury unit at the Rehabilitation Institute of Chicago, testified that based on his examination of plaintiff and a review of plaintiff's medical records and the

results of vocational tests given to plaintiff, it was his opinion that plaintiff's opportunities for future employment were "practically nil."

Michelle Marme, a vocational evaluator employed at the Rehabilitation Institute of Chicago, testified that based on her review of plaintiff's school records and the results of vocational tests which she administered, plaintiff would be "minimally employable" at age 18, assuming he continued his education and was graduated from high school.

I

■ City first argues that plaintiff was a trespasser to whom the only duty owed by city as an owner of land was to refrain from wilfully and wantonly injuring him. Although this is generally true, our supreme court in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625, 126 N.E.2d 836, held:

> "*** [A]n exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner *or other person in possession and control of the premises* to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. [Citation.] The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, *the true basis of liability being the foreseeability of harm to the child*." (Emphasis added.)

City contends that *Kahn* does not apply to it because plaintiff was not injured on city property, but on the adjacent property owned by Conrail. However, this argument misinterprets both the facts and the language of the *Kahn* opinion. In *Kahn*, defendant lumber company was found liable for injuries suffered by a child who fell from a pile of lumber which the lumber company had delivered and stacked on land owned by a third party. The court stated:

> "The creator of certain conditions dangerous and hazardous to children because of their immature appreciation of such dangers and hazards must be held to a certain standard of conduct for the protection of such children in accordance with the attendant circumstances and conditions. ***. The test in the case

at bar is whether the lumber company in the exercise of ordinary care could reasonably anticipate the likelihood that children would climb on to the lumber and would be injured if it were not securely piled." 5 Ill. 2d 614, 622-23.

In *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 324, 383 N.E.2d 177, the supreme court, in applying the *Kahn* doctrine, stated:

"It is firmly established in Illinois that a party that creates a dangerous condition will not be relieved of liability because that party does not own or possess the premises upon which the dangerous condition exists. [Citations.] *A party that creates a dangerous condition or is in control of premises on behalf of the owner or possessor is subject to liability, to the same extent as would be the owner or possessor, for injury to children caused by the dangerous condition.* [Citations.]" ₍Emphasis added.)

Thus, not only is the "owner" of land upon which a child is injured potentially liable, but a nonowner who "creates" a condition which is hazardous to children on the premises may also be liable under the *Kahn* doctrine.

■ Under the circumstances of the instant case, where: (1) city had a contractual duty to maintain the fence which separated its property from that of the railroad; (2) city allowed such fence to remain in a state of disrepair providing access to the railroad tracks; and (3) city had notice that children were in fact using a hole in its fence to gain access to the railroad tracks and to play in close proximity to moving trains which have been recognized as "instrumentality[ies] of great potential danger to children" (*Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1965), 73 Ill. App. 2d 5, 18, 220 N.E.2d 43, *aff'd* (1969), 42 Ill. 2d 103, 245 N.E.2d 762), we believe that city could properly be found to have "created" or contributed to a hazardous condition even though city did not own the property upon which the dangerous instrumentality was located. Under the *Kahn* rationale, therefore, city had a duty to exercise ordinary care to guard against injury which may naturally result as the foreseeable consequence of its acts. The test of city's culpability here is whether city "in the exercise of ordinary care could reasonably have anticipated the likelihood" that plaintiff or any child would climb through the hole in the fence and as a consequence be injured. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623, 126 N.E.2d 836.) "In the trial of a law suit, questions of one's due care, another party's alleged negligence and the proximate cause of such injured party's injuries and damages are

pre-eminently questions of fact for a jury's determination." 5 Ill. 2d 614, 623, 126 N.E.2d 836.

Although no Illinois cases appear to have dealt with the precise factual situation of the case *sub judice*, New York courts have addressed the liability of a city in similar situations for failure to fence or to properly maintain fences for the protection of children. In each case, the city was found liable for the resulting injuries to children occurring on the adjacent railroad property.

In *Leone v. City of Utica* (1979), 414 N.Y.S.2d 412, 66 App. Div. 2d 463, the city appealed a judgment entered on behalf of a minor who was injured in a railroad yard "located adjacent to a city-owned and regularly-used park and playground" which was not fenced. The court held:

> "While the degree of care to be imposed upon a municipality in a particular case is necessarily dependent upon the attendant circumstances and is thus ordinarily a jury question [citation], it is the claim of the defendant City of Utica that the plaintiffs should be foreclosed from recovery as a matter of law. We disagree." (414 N.Y.S.2d 412, 414, 66 App. Div. 2d 463, 465.)

The court then reviewed the evidence there presented, noting that the railroad property was adjacent to the city's park and that "[n]either the playground nor the larger park area was enclosed by fencing and thus there were no formidable obstacles or barriers between the playground and the remainder of the park, or between the park and the railroad property." The court rejected the city's contention that it "owed no duty" to plaintiff, finding that the city owed to him a duty of "ordinary care":

> "The record sufficiently establishes that young children often played in the wooded area of the park west of the creek and it may be fairly inferred that the city was aware of that activity and made no effort to prevent it. Additionally, the city had knowledge of the location of the railroad tracks and that pathways in the park lead to those tracks. Certainly the jury may have found, in view of the foreseeable danger of serious injury presented by the location of the railroad tracks [citations], that the failure of the city to fence its playground or park, or to supervise the use of the park or take some other reasonable precaution to prevent or discourage children from going onto the railroad property, constituted a lack of ordinary care [citations]. While the city might have introduced proof showing that it would have been unduly burdensome to take measures to avoid the risk of harm presented here [citations], it did not do so."

(414 N.Y.S.2d 412, 415, 66 App. Div. 2d 463, 466-67.)
See also *Lukasiewicz v. City of Buffalo* (1976), 390 N.Y.S.2d 341, 55 App. Div. 2d 848; *Scurti v. City of New York* (1976), 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794.

■ Similarly, in the case at bar, city owed a duty of "ordinary care" to plaintiff as established in *Kahn*, presenting a jury question with regard to whether that duty had been breached with resulting injury to plaintiff. A jury verdict can be set aside only when a court of review finds it to be a result of passion and prejudice or wholly unwarranted by the evidence. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836.) From our review of the evidence in this record, we believe the jury may reasonably have found that city breached its duty to plaintiff when, despite notice that children were using the hole in city's fence to gain access to the railroad tracks, city nevertheless failed to repair the fence and as a foreseeable result plaintiff was injured.

## II

■ City next contends that plaintiff's appreciation of the danger associated with "flipping" moving railroad trains precludes the application of *Kahn*. A prerequisite for the imposition of liability under *Kahn* is that the minor plaintiff be found to be "incapable of appreciating the risk involved" by reason of his immaturity. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 625, 126 N.E.2d 836.) City cites *Sydenstricker v. Chicago & Northwestern Ry. Co.* (1969), 107 Ill. App. 2d 427, 247 N.E.2d 15, for the proposition that where a child is capable of appreciating the risk involved in a particular activity, the application of *Kahn* is inappropriate. According to defendant the jury's finding that plaintiff was 18% at fault "conclusively determined that plaintiff was able to and did, in fact, appreciate the risk involved in attempting to jump on a moving freight train."

Plaintiff responds that in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, our supreme court adopted the "pure" form of comparative negligence and specifically rejected the previous Illinois law which held that *any degree* of contributory negligence by the plaintiff should bar his recovery. Here, the jury made no specific finding that plaintiff "appreciated the risk" in jumping on a moving freight train. It merely found that plaintiff was 18% at fault. We cannot conclude from such verdict that "plaintiff actually appreciated the danger of flipping railroad cars" within the context of *Kahn* and *Sydenstricker*.

### III

City next contends that its alleged negligence in failing to maintain the fence through which plaintiff reached the railroad tracks could not be the premise of liability because such negligence was not the proximate cause of plaintiff's injuries. City defines proximate cause as "a cause which in its natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." Here, city contends its alleged negligence did no more than "furnish a condition by which an injury is made possible and that [when such] condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury." In short, city maintains that its failure to repair the fence, under these facts, at most enabled plaintiff to be injured by the independent and intervening act of the railroad.

Plaintiff responds that under the facts of this case the question of whether city's negligent maintenance of the fence was a proximate cause of plaintiff's injuries was a fact question for the jury. In *Maskaliunas v. Chicago & Western Indiana R.R. Co.* (1925), 318 Ill. 142, 148, 149 N.E. 23, the court was faced with a similar argument and stated "[c]ertainly, it cannot be ruled, as a matter of law, that the absence of a fence did not contribute to the accident, and the question was therefore one proper to be submitted to the jury." See also *Pellegrini v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 91 Ill. App. 3d 1091, 415 N.E.2d 615.

In *Leone v. City of Utica* (1979), 414 N.Y.S.2d 412, 416, 66 App. Div. 2d 463, 467, the court rejected the city's contention that "its conduct was not the proximate cause of [plaintiff's] injury," stating:

> "Anthony testified that he was playing in the park when he heard the train whistle and he then ran along one of the footpaths directly to the tracks. While the path Anthony used may have led from the park over private property and then to the tracks, neither the actual place of his exit from the park nor the precise location of the accident may be said to be so remote as to require a determination, as a matter of law, that the injury was not proximately caused by the city's negligence. The jury properly may have found that the city's breach of duty was a substantial factor in bringing about this foreseeable occurrence [citations]. Since there were no barriers or apparent line of demarcation between the park land and the contiguous property, it could reasonably have been anticipated that an infant, attracted by a train whistle, might take a path leading

from the park and across that property to the tracks. The jury permissibly could have found that a fence along the boundary between the park and the private property would have prevented this accident. Thus viewed, the issue of liability was properly submitted to the jury as a question of fact [citation]."

We believe that under the evidence presented in the instant case the issue of whether city's failure to maintain its fence was a proximate cause of plaintiff's injury was appropriately left for the jury's determination.

## IV

■ City argues that the trial court erred in permitting Michelle Marme and Dr. Terry Carle to testify, as experts, to their opinions regarding plaintiff's loss of future earnings. City correctly posits that while a plaintiff has the right to recover the amount of future income he will lose due to his injury, he must prove the loss to a reasonable certainty and "speculation, conjecture or evidence that such losses are mere possibility [*sic*] is insufficient." (*York v. Grand Trunk Western R.R. Co.* (1979), 71 Ill. App. 3d 800, 806, 390 N.E.2d 116.) In the instant cause, city contends that the testimony of Carle and Marme was "based on speculation and not fact" because, in city's opinion, the witnesses' testimony failed to take into account "the development of plaintiff's potential vocational skills and probable educational achievements."

The decision to admit expert testimony rests within the sound discretion of the trial court (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079), and the current trend of Illinois law is "to allow expert testimony if it will assist the trier of fact in understanding the evidence even though the average juror would also have some knowledge of the subject matter. [Citations.]" (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 413, 444 N.E.2d 220.) Without detailing the extensive experience of these two witnesses, we note that both had strong educational and practical training in caring for the physically disabled and in assisting patients with vocational care and training, as well as in occupational therapy. We find no error in the trial court's admission of their testimony. *Doering v. Janssen* (1979), 76 Ill. App. 3d 62, 394 N.E.2d 721.

■ City further contends that the witnesses' conclusions that plaintiff's opportunities for future employment would be extremely poor were contradicted by testimony of the same witnesses that plaintiff was "bright" and had scored well on tests administered to him. We do not find that such "contradictions" require reversal in this

case. Purported weaknesses in expert testimony are matters properly raised in cross-examination and argument:

> "Admittedly, portions of [the expert's] reconstruction testimony were contradicted by the other· evidence. However, discrepancies in testimony and evidence are matters for the jury's consideration, and the jury is free to disregard an expert's conclusion of fact." (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 685.)

We conclude that the trial court properly allowed the jury to consider the testimony of Dr. Carle and Michelle Marme.

## V

■ City next argues that the jury was improperly instructed, contending that the trial court erred by: (1) refusing city's proffered instructions which defined the term "trespasser" and the duty which a landowner owes to a trespasser; (2) giving Illinois Pattern Jury Instruction (IPI), Civil, No. 10.04 (2d ed. 1971), proffered by plaintiff, which advised that defendants were under a duty to "use ordinary care for the safety of plaintiff"; and (3) failing to give, in place of IPI Civil 2d No. 10.04, IPI Civil 2d No. 120.04 ("Attractive Nuisance — Injury to Children"),[1] which was not proffered by either party.

(1) It is axiomatic that jury instructions are intended to inform the jury of the correct principles of law applicable to the evidence admitted at trial. (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65.) Since, as previously stated, the law relevant to trespassers is not applicable to this case, city's proffered instructions relative to trespassers were properly rejected by the trial court. *Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1965), 73 Ill. App. 2d 5; see also *Schranz v. Halley* (1983), 114 Ill. App. 3d 159, 448 N.E.2d 601.

■ (2) City contends that the trial court erred in instructing the jury (IPI Civil 2d No. 10.04) that the defendants were obligated to "use ordinary care for the safety of plaintiff." We must disagree; *Kahn* established that the duty of care owed in cases such as this is "ordinary care." *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 621, 126 N.E.2d 836.

● 10 (3) With regard to city's contention that the trial court erred

---

[1]The relevant Comment indicates that the words "Attractive Nuisance" were included in the title of this instruction as "a useful catch phrase and not to indicate that the instrumentality which causes the injury need have attracted the children onto the premises. The attractive nuisance doctrine was discarded in Illinois in *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 126 N.E.2d 836 (1955)."

in failing *sua sponte* to give IPI Civil 2d No. 120.04 in place of IPI Civil 2d No. 10.04, we agree with plaintiff that city has waived this argument by its failure in the trial court to object to plaintiff's IPI Civil 2d No. 10.04 or to itself proffer IPI Civil 2d No. 120.04. (*Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670, 674, 432 N.E.2d 1293.) We find misplaced city's reliance upon *King v. Casad* (1984), 122 Ill. App. 3d 566, 461 N.E.2d 685, since in that case the party who raised the issue on appeal had, in fact, proffered the proper instruction to the trial court. For these reasons, we find city's contentions of error relevant to jury instructions to be without merit.

VI

■■■ Prior to the selection of the jury, plaintiff had filed a motion *in limine* asking the trial court to exclude any evidence bearing on the minor plaintiff's alleged contributory negligence. Plaintiff's motion was bottomed on defendants' failure, in their answers to plaintiff's complaint, to plead contributory negligence by plaintiff. Although the trial court denied plaintiff's *in limine* motion, it offered to defendants an opportunity to amend their answers; defendants elected not to do so.

While defendants, in their case in chief, presented no evidence relevant to plaintiff's contributory negligence, in closing argument defendants contended that the evidence adduced by plaintiff demonstrated that plaintiff's injuries resulted from his own negligence. The trial court instructed the jury to reduce plaintiff's damages in proportion to his own negligence, if any. The jury found that plaintiff had been 18% negligent and reduced his damages accordingly.

Plaintiff now cross-appeals, arguing that a defendant's failure affirmatively to plead contributory negligence precludes submission of that issue to the jury. Plaintiff posits that contributory negligence should be construed to be an "affirmative defense or matter" which must be affirmatively pleaded pursuant to section 2—613(d) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—613(d)), which states in relevant part:

> "The facts constituting any affirmative defense *** and any defense which by other affirmative matters seeks to avoid the legal effect of or defeat the cause of action set forth ***, must be plainly set forth in the answer or reply."

Prior to 1981, contributory negligence in Illinois was a complete defense to an action in tort and if proved "defeat[ed]" the cause of action." In 1981, our supreme court "abolished the common law doctrine of contributory negligence" and adopted the "pure" form of

comparative negligence.[2] Under prevailing Illinois law, therefore, contributory negligence is no longer an absolute defense but goes only to the diminution of damages.

Although Illinois courts do not appear to have addressed the precise issue here raised by plaintiff, this court noted in *Marcin v. Kipfer* (1983), 117 Ill. App. 3d 1065, 1069, 454 N.E.2d 370, that since "[t]he development of the doctrine of comparative negligence is still in its early stages in this State, *** the treatment given contributory negligence in cases arising under the Federal Employers' Liability Act (FELA) (45 U.S.C.A., par. 51 *et seq.*) should be followed by analogy."[3]

We find *Lee v. Louisville & Nashville R.R. Co.* (1953), 349 Ill. App. 276, 110 N.E.2d 691 (a case arising under FELA), analogous to the case *sub judice.* In *Lee*, the defendant's answer denied any negligence by defendant; alleged that plaintiff's injuries were the proximate result of his sole negligence; and did not specifically plead contributory negligence by plaintiff as a defense. Defendant proffered to the trial judge an instruction requiring the jury to reduce damages in proportion to plaintiff's contributory negligence. The trial court refused defendant's instruction on the ground that "defendant had not plead contributory negligence as a defense and therefore it was not an issue in the case."

The appellate court reversed, holding that FELA had abolished contributory negligence as a defense and that the issue of plaintiff's contributory negligence went solely to the diminution of damages. Since the court found plaintiff Lee's own testimony sufficient "to justify the jury in drawing an inference of some contributory negligence" on his part, the appellate court held that the instruction proffered by defendant was proper and should have been given despite defendant's failure specifically to plead plaintiff's contributory negligence.

We deem the rationale of *Lee* persuasive. Since Illinois has abolished contributory negligence as a defense, the issue applies only to the question of damages. Here, there was sufficient evidence intro-

---

[2]"Under a 'pure' form, the plaintiff's damages are simply reduced by the percentage of fault attributable to him. Under a 'modified' form, a negligent plaintiff may recover so long as the percentage of his fault does not exceed 50% of the total." *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 25.

[3]FELA introduced the principle of comparative negligence into American law in 1908. When Illinois, in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 15, adopted the concept of comparative negligence it was the 37th State of the United States so to do. Eleven states had adopted the "pure" comparative negligence approach; 23 States had adopted the "modified" approach; and 3 States had their own version of comparative negligence.

duced by plaintiff to support an inference that he was in some degree negligent;[4] it was therefore proper for the jury to be instructed that if, in fact, it found plaintiff to be contributorily negligent, any damages awarded to him should be reduced in the same proportion.

For the reasons heretofore stated, the judgment of the trial court is affirmed.

Judgment affirmed.

STAMOS, P.J., and HARTMAN, J., concur.

---

[4]This case does not present, and we therefore do not address, the question of whether a defendant who has not pleaded contributory negligence of plaintiff would be permitted to then introduce independent evidence of such alleged contributory negligence. Here defendant introduced no evidence on this issue, but relied on plaintiff's own evidence to support his contention that plaintiff was in fact contributorily negligent.