LINDA MARIE OSTROWSKI FINK, Plaintiff-Appellant, *v.* GEORGE P. BAKER *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 59830

Opinion filed March 15, 1977.

John G. Phillips, Ltd. and Gary E. Dienstag, both of Chicago (Sidney Z. Karasik, of counsel), for appellant.

John V. Ryan, III, of Rooks, Pitts, Fullagar & Poust, of Chicago, for appellee Elgin, Joliet & Eastern Railway Company.

Lord, Bissell & Brook, of Chicago (James H. Alesia, Richard E. Mueller, and John J. Berwanger, of counsel), for appellee Baltimore and Ohio Railroad Company.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Irving G. Swenson and Ellen J. Kerschner, of counsel), for appellee H. Bairstow Company.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Linda Marie Ostrowski Fink (hereinafter plaintiff) takes this appeal pursuant to Supreme Court Rule 304 from the grant of a summary judgment in favor of defendants Elgin, Joliet & Eastern Railway, Inc. (hereinafter E.J.&E.), Baltimore & Ohio Railroad Company (hereinafter B.&O.), and H. Bairstow Company (hereinafter Bairstow).

On May 29, 1970, plaintiff, then 16 years of age, suffered injuries resulting in the amputation of both of her legs when she was caught between the cars of a freight train which started to move just as she was walking over the coupling of two of its cars. The train was owned and operated by Penn Central Transportation Company[1] and was situated in Penn Central's Calhour Yard in Hammond, Indiana.

The northwest corner of Hammond is bordered on the west by Illinois and on the northeast by Lake Michigan. Located at the point where the lake and the State lines meet is an electric generating station owned and operated by Commonwealth Edison of Indiana. As the lake shore reaches Illinois, it turns north. A paved road, which runs within a few hundred feet of the lake shore, ends at the gate to the generating station. Along the shore to the southeast of the station is a stretch of wooded and hilly undeveloped property 2,000 feet in length held in a trust created by

---

[1] After initiating suit, plaintiff, aware of Penn Central's bankruptcy, joined Baker, Bond, Langdon & Wirtz, the trustees of Penn Central's property, as defendants. For simplicity, these defendants will be referred to collectively as "Penn Central."

Charles B. Shedd. Further along the shore to the southeast is realty owned by the City of Hammond. A public beach is located at Hammond's most easterly point.

Southwest of and parallel to these lake front properties is a series of rights of way. Immediately southwest and adjacent to the Shedd property is a 100-feet wide right of way owned by E.J.&E. To the southwest and adjacent to the E.J.&E. property is a 200-feet wide right of way owned by the B.&O. A portion of the B.&O. property, near the E.J.&E. property, is leased by Bairstow as a storage and handling facility for slag and other steel and iron producing byproducts. The B.&O. uses the remaining portion of its land as a railroad right of way. To the southwest and adjacent to the B.&O. right of way is a 100-feet wide right of way owned by the New York Central Railroad Company. Immediately southwest is a narrow strip of land owned by Commonwealth Edison of Indiana and/or C.D.E.G. Co. and/or Shedd. Immediately southwest and adjacent is Calhour Yard, where plaintiff was injured.

Plaintiff came to be on Penn Central's property because she and some friends were proceeding from the Hammond beach area toward a gas station on Indianapolis Boulevard in Illinois. There was no street or path over which plaintiff could have directly proceeded to Indianapolis Boulevard within 2,000 feet, nor was there any path or trail going through the Calhour Yard toward Indianapolis Boulevard. Plaintiff chose to cross directly through defendants-appellees' properties and the Calhour Yard.

Plaintiff filed her initial complaint only against Penn Central. She joined Penn Central's trustees, E.J.&E., B.&O. and Bairstow in an amended complaint wherein she alleged, *inter alia*, that E.J.&E. and B.&O. were negligent in that they failed to provide a fence or other protective devices in an area which they knew was frequently traversed by members of the public. In a separate count, she alleged that Bairstow allowed the public, including children, to regularly use its property as a recreational area, thereby establishing a path for travel through its property and onto Penn Central's tracks, but failed to erect fences or warning sign to prevent pedestrian traffic through its slag storage area toward the railroad yards and track area.

All defendants-appellees denied the material allegations of the amended complaint. Bairstow, as an affirmative defense, alleged that plaintiff, if upon its premises at all, was a trespasser.

After discovery pursuant to the pleadings, E.J.&E., B.&O. and Bairstow filed separate motions for summary judgment, attaching their respective depositions and affidavits in support thereof. These motions for summary judgment alleged that: (1) plaintiff was a trespasser, (2) defendants had no knowledge that pedestrians were crossing their properties, (3) they did not own or control the equipment which injured

plaintiff or the premises upon which she was injured, and (4) negligence, if any, on their part was not the proximate cause of plaintiff's injury. In opposition to defendants-appellees' motions, plaintiff filed counteraffidavits of six persons who each stated that, on numerous occasions, they had personally crossed over defendants-appellees' properties, in a direct line between Indianapolis Boulevard and the beach area, without being questioned or warned not to do so. The evidence deposition of one Sam Visnick was also presented to the trial court for consideration. Visnick was an engineer employed by the Penn Central in May of 1970. He testified that, over a period of 20 years, he often saw boys and girls in Calhour Yard, going to and coming from the beach area. Plaintiff also testified in her discovery deposition that she had previously seen people cross through the railroad yards.

In separate orders, the three motions for summary judgment were granted, with express findings that there was no just reason for delay of appeal or enforcement of the court's order. The cause against Penn Central was continued. Plaintiff's motion for reconsideration was denied and this appeal ensued.

■■ The threshold question posed in this case is whether Illinois or Indiana law is to be applied in the resolution of the substantive issues presented. In *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593, our Supreme Court adopted the rule that the law to be applied in a tort case is the law of the State which has the most significant contacts with the elements of the cause of action. Plaintiff contends that *Ingersoll*, which overturned the vested rights theory of choice of law, precludes this court from giving extraterritorial effect to Indiana law under the doctrine of *lex loci delicti*. Defendants contend the law of Indiana should apply. *Ingersoll* states:

> "[T]he local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, the law of Illinois should apply." 46 Ill. 2d 42, 45, 262 N.E.2d 593, 595.

Plaintiff contends that Illinois is the State most significantly related to this incident. She urges the following factors: Plaintiff is an Illinois resident. Defendants are either Illinois corporations or licensed to do business in Illinois. Most of plaintiff's witnesses reside in Illinois. Most of plaintiff's medical treatment was received in Illinois. The incident occurred near the Illinois-Indiana State line. Plaintiff was returning to Illinois when the incident occurred.

Defendants-appellees refute this contention and urge that Indiana is the State most significantly related to the incident and hence that Indiana law applies. They urge these factors be considered: The incident

occurred in Indiana. All defendants are either incorporated in Indiana or qualified to do business there. At issue here is the duty of Indiana landowners or occupants toward persons who come upon their land.

The American Law Institute's Restatement (Second) of Conflict of Laws § 145(2) (1971), lists certain contacts which should be taken into account in determining the State of the most significant relationship. The significance which is given each contact should be according to its relative importance with respect to the particular issue. These contacts are:

"(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered."

■■ We find that, under the principles of *Ingersoll* and the Restatement, Indiana is the State which has the most significant relationship to the instant action. Many of the factors raised by plaintiff are irrelevant. Unlike *Ingersoll*, where a relationship between the parties arose in Illinois, giving rise to a duty governed by Illinois law, at issue here is the duty of Indiana landowners or occupants towards people upon their land. The residence of such people is immaterial in determining the applicable law. There does not appear to be a strong Illinois public policy opposed to that of Indiana concerning the substantive issues here involved. (See *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 239 N.E.2d 799.) We hold Indiana law should be applied to the fact situation here involved.

The substantive issues raised in this appeal are as follows:

(1) Whether defendants-appellees had a duty to fence or otherwise protect their land so as to prevent plaintiff from being injured on adjacent land?

(2) Whether defendants-appellees' breach of duty was a contributory or proximate cause of plaintiff's injuries?

(3) Whether plaintiff was guilty of contributory negligence as a matter of law?

(4) Whether there were genuine issues of material fact which precluded the entry of a summary judgment?

We need only treat the first and fourth issues to resolve this dispute under Indiana law.

Plaintiff argues defendants-appellees owed plaintiff a duty of reasonable care which was breached by defendants-appellees' failure to provide a safe crossing area for pedestrians through their premises, by defendants-appellees' failure to erect a fence or other protective device which would have prevented plaintiff from gaining access to their

premises, and, in Bairstow's case, Bairstow's failure to warn plaintiff of the dangerous conditions existing adjacent to its property. The principal fact giving rise to this duty, as shown by the various affidavits, depositions and other materials submitted by plaintiff, is alleged to be that defendants-appellees had constructive knowledge that children and others frequently traversed across defendants-appellees' premises to and from the beach area. Defendants-appellees dispute this constructive knowledge, but counter that, even assuming *arguendo* they did have knowledge that people were crossing their premises, defendants-appellees did not breach any duty which Indiana law might impose upon them with respect to plaintiff.

The general rule in Indiana is that an owner or occupant of land owes no duty to a trespasser thereon except to refrain from wilfully or intentionally injuring him after discovery of his presence. (*Chicago, South Shore & South Bend R.R. Co. v. Sagala* (1966), 140 Ind. App. 650, 221 N.E.2d 371.) A railroad company is under no duty to provide a safe crossing for pedestrians at any specific point along its right of way (*McClelland v. Baltimore & O.C.T.R. Co.* (7th Cir. 1941), 123 F.2d 734), is under no duty to fence or otherwise barricade its right of way from public access (*Indiana Harbor Belt R.R. Co. v. Jones* (1942), 220 Ind. 139, 41 N.E.2d 361), and is under no duty to maintain a lookout or a system of signals to prevent a trespasser upon its land from being injured thereon. *Calvert v. New York Central R.R. Co.* (1936), 210 Ind. 32, 199 N.E. 239.

Indiana defines trespasser as a person who enters or crosses a railroad's right of way "without license, invitation or other right for some purpose of his own or for his own convenience, pleasure or benefit." (*New York Central R.R. Co. v. Wyatt* (1962), 135 Ind. App. 205, 214, 184 N.E.2d 657, 662.) Plaintiff in the case at bar crossed the rights of way solely for her own convenience and without invitation of defendants-appellees. She was clearly a trespasser under Indiana law.

It is undisputed that plaintiff was not injured by the wilful or intentional misconduct of defendants-appellees. Thus, application of the general principles heretofore stated leads us to conclude that no duty toward her was breached by defendants-appellees. Plaintiff attempts to avoid this result by means of several well recognized exceptions to the general rule regarding the duty raised by the relationship between an owner and trespasser. The first exception is the greater duty of a railroad company to children upon its premises. If a railroad company has knowledge, actual or constructive, that a child *non sui juris* is trespassing upon its tracks, the company must operate its cars with deference to the possible presence of the child. It must exercise ordinary care before doing any affirmative act that might imperil the child's life and limb. Otherwise, no additional care is imposed on the company over that which is owed to an adult trespasser.

*Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Means* (1914), 59
Ind. App. 383, 104 NE. 375, 104 N.E. 785; *Indiana Harbor Belt R.R. Co. v.
Jones.*

Plaintiff was not injured by an affirmative act of defendants-appellees
that imperiled her safety. When plaintiff left defendants-appellees'
premises unharmed, defendants-appellees' duty of reasonable care
toward her was extinguished. Furthermore, by her own deposition,
plaintiff showed herself to be at an age of discretion and aware of the
danger involved in crossing between cars of a train. She, therefore, would
not come under the exception for child trespassers. See *Chicago, South
Shore & South Bend R.R. Co. v. Sagala.*

The other exception urged by plaintiff has evolved from certain so-
called "foot path" cases, in which it was known by the railroad company
that people for a period os time had habitually crossed upon the
company's tracks at a particular point. The standard of care required is
more than to merely refrain from wilful or intentional misconduct. The
railroad company is required to keep a lookout and give a warning when
a train is approaching the frequented point on the tracks. This is because,
by acquiescing to the use of the "foot path," the railroad company is said
to have extended an implied invitation to the public to cross its premises.
A pedestrian thereby ascends to the status of an invitee. (*Pittsburgh,
Cincinnati, Chicago & St. Louis Ry. Co. v. Simons* (1907), 168 Ind. 333, 79
N.E. 911; *Lake Erie & Western R.R. Co. v. Fleming* (1915), 183 Ind. 511,
109 N.E. 753.) However, the exception is not applicable where, as in the
case at bar, the public traversed the tracks indiscriminately at any point
that suited their convenience. (*McClelland v. Baltimore & O.C.T.R. Co.*)
Also, defendants-appellees' duty under this exception consisted solely of
warning plaintiff of approaching trains. We have found no Indiana cases
which required warning or protecting the public from a dangerous
condition on adjacent property. See *McGunegill v. Chesapeake & O. Ry.
Co.* (7th Cir. 1952), 199 F.2d 302.

■■ A summary judgment is proper if the pleadings, depositions, and
admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled
to judgment as a matter of law. (Ill. Rev. Stat. 1971, ch. 110, par. 57.)
Factual issues which are not material, regardless of how sharply
controverted, will not defeat a motion for summary judgment. (*Macmor
Mortgage Corp. v. Exchange National Bank* (1975), 30 Ill. App. 3d 734,
332 N.E.2d 740.) Whether defendants had constructive knowledge that
the public was crossing their rights of way is not a material issue under
Indiana law. We hold that defendants were entitled to judgment as a
matter of Indiana law and that the summary judgment was properly
granted.

■■ ■ We note, parenthetically, that Illinois law would also not impose liability on defendants-appellees. It has been held that the failure of a railroad company to fence its track cannot be the proximate cause of an injury to a person occurring on an adjacent and parallel track belonging to another railroad company which also failed to fence its track, though such person had to cross the track of the first company to reach the place of injury. (*Curran v. Chicago & Western Indiana R.R. Co.* (1919), 289 Ill. 111, 124 N.E. 330.) Hence, any conceivable negligent act or omission with which defendants might be charged could not be the proximate cause of plaintiff's injuries sustained on Penn Central's right of way. Summary judgment was therefore appropriately granted by the trial court.

For the reasons herein stated, the judgment of the Circuit Court is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN,* J., concur.

---

* At the time of oral argument of this case Justice John C. Hayes sat with Justices Downing and Stamos. Subsequently Justice Hayes died. Since that time Justice Perlin was designated the third member of the panel and has listened to the tape of the oral argument, has read the briefs and excerpts from the record.