CHARLES JOHNSTON, a Minor, by Elizabeth Johnston, his Mother and Next Friend, Plaintiff-Appellant, v. ILLINOIS BELL TELEPHONE COMPANY et al., Defendants (Marsco Manufacturing Company, Inc., Defendant-Appellee).

First District (4th Division)   No. 1—88—3717

Opinion filed March 8, 1990.

Neil Gershon, of Jules S. Gershon & Associates, of Chicago (Robert Handelsman, of counsel), for appellant.

Shelmerdeane A. Miller, of Law Offices of Roderick J. Bergin, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Charles Johnston, brought suit for personal injuries against the defendant, Marsco Manufacturing Company, Inc., and Commonwealth Edison, alleging negligence. Marsco filed a motion

for summary judgment, arguing that Marsco owed no duty to Johnston. The trial court granted Marsco's motion, and Johnston appeals from the summary judgment order.

In June of 1985, Johnston, a minor, was severely burned when he climbed up a Commonwealth Edison utility pole and came into contact with the transformer. Marsco Manufacturing Company owns a building adjacent to the pole. On the side of the building facing the utility pole there is a window covered with a window grate that has horizontal bars. The roof of the building is fenced. On the day of the injury, Johnston was playing ball in the vicinity of the building and utility pole. A ball landed on the roof of the Marsco building, and Johnston set out to retrieve it. He climbed atop some refuse barrels underneath the window of the Marsco building. The uncontroverted testimony is that the barrels did not belong to Marsco, nor did Marsco place the barrels in that location. Johnston stepped from the barrels onto the ledge and grate of the window. Holding onto the grate, Johnston then stepped onto a small pole attached to the utility pole and moved his hands from the grate to the pegs on the utility pole. He proceeded to climb up the utility pole, but was unable to get from the pole to the roof of the building. He then climbed partway down the pole and thrust himself onto an adjacent platform. In an attempt to move to another utility pole, Johnston started to move across the platform. He grabbed onto the transformer and was severely burned by the electrical current.

At his deposition, the owner of the Marsco building testified that he knows children regularly play ball in the vicinity of his building. There is a "pitching box" drawn on the wall of another Marsco building nearby. The owner testified that he is aware of four occasions when a Marsco employee retrieved balls from the roof of Marsco's building for the children. The owner has never seen children climbing on the window grate or the utility pole. He is aware, however, of another young boy who was similarly injured in November of 1980 trying to retrieve a ball off of the Marsco building roof. This boy also used the window grate as a hand and foothold to climb over and onto the utility pole. The boy was shocked and burned by a transformer located near the top of the pole. Marsco's owner testified that after the incident in 1980, he checked the Marsco roof to make sure the fence was still in place and functioning to repel balls from the rooftop. In a meeting with Commonwealth Edison on an unrelated matter, Marsco suggested to Commonwealth Edison that the utility pole be fenced to prevent further mishaps.

In his complaint against Marsco Manufacturing, Johnston alleged

that Marsco was negligent in erecting the window grates and placing the refuse cans in a manner it should have known could cause injury to children. Marsco, contending it owed no duty to Johnston, filed a motion for summary judgment that the trial court granted. Johnston appeals from the summary judgment order.

At the core of Johnston's argument is his interpretation of the case of *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417, a case Johnston proposes is on "all fours" with his own. In *La Salle*, the court, relying on *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, found the city liable for failing to repair a hole in a fence through which a child gained access to an adjacent railroad track, where he was injured. The city was aware that children were in the habit of passing through the hole in the fence onto the railroad track. The court found that while the city did not own the property upon which the dangerous instrumentality was located, the trier of fact could properly find that the city had " 'created' " or contributed to the hazardous condition. *La Salle*, 132 Ill. App. 3d at 613, 478 N.E.2d at 421.

Johnston concludes that if *La Salle* is applied to the present case, Marsco Manufacturing is liable in negligence because: (1) Johnston used the window grate to gain access to the utility pole and the transformer, the dangerous instrumentality on which he was injured; (2) Marsco knew that children played in the vicinity and that another boy had been similarly injured in November of 1980; and (3) Marsco failed to take the relatively simple and inexpensive steps, such as posting warning signs, boarding up the window grate, or using a grate with vertical bars, that would have precluded Johnston using the window for access. Johnston has generalized the factors of *La Salle* into a broad principle of law: a property owner is liable for injury to a child if he fails to take reasonable steps to preclude the child from using his property to gain access to a dangerous instrumentality elsewhere, and the owner knows that children are using his property in such a manner.

■ We do not believe that the *La Salle National Bank v. City of Chicago* case supports the broad interpretation Johnston infers. The *La Salle* court specifically limited its holding to the narrowly drawn circumstances of the case: "Under the circumstances of the instant case, where: (1) city had a contractual duty to maintain the fence \*\*\*; (2) city allowed such fence to remain in a state of disrepair \*\*\*; and (3) city had notice that children were in fact using a hole in its fence to gain access to the railroad tracks and to play in close proximity to moving trains \*\*\* we believe that city could properly be

found to have 'created' or contributed to a hazardous condition." (*La Salle*, 132 Ill. App. 3d at 613, 478 N.E.2d at 421.) We are unwilling to generalize the holding of *La Salle* beyond the scope delineated by that court.

Johnston also cites to the case of *Halloran v. Belt Ry. Co.* (1960), 25 Ill. App. 2d 114, 166 N.E.2d 98. In *Halloran*, the court applied the reasoning of *Kahn* to find that the owner of sandpiles on which children habitually played was liable to a child injured on railway tracks that traversed the approach to the sandpiles. The court did not consider whether sandpiles in themselves are dangerous and acknowledged that the sandpile owner did not own or control the property on which the child was injured. Nevertheless, the court found that the sandpile owner was responsible for the creation of the attraction which lured the children into the dangerous environment of the railroad tracks. The court noted that the attractiveness of the premises or instrumentality was a controlling factor.

In the present case, Johnston has not alleged that Marsco, in placing the window grate as it did, created an attraction such as the alluring sandpiles of the *Halloran* case. Further, while Marsco knew that children played ball in the vicinity of its building, it had no knowledge of children habitually climbing onto the window grate or the utility pole. Marsco was aware of another instance in which a child was injured in a manner similar to that described in this case. We believe, however, that such an incident, isolated in nature, involving a common, nondangerous instrumentality, is distinguishable from the kind of habitual use noted in *Halloran*.

■ Johnston also points to the incident of November 1980 in arguing that Marsco's liability is predicated upon foreseeability. For support, Johnston cites to *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177, wherein the supreme court cites *Kahn* as having established "foreseeability of harm to children as the cornerstone of liability." (*Corcoran*, 73 Ill. 2d at 326, 383 N.E.2d at 180.) Because it has also stated that the proper basis of analysis in property owners' liability to children cases is the customary rules of ordinary negligence (*Kahn v. James Burton Co.*, 5 Ill. 2d at 624, 126 N.E.2d at 841), we do not believe that the supreme court's statement in *Corcoran* is to be highlighted out of context. The supreme court has also stated, in a decision rendered after *Kahn*, that "whether the law imposes a duty does not depend upon foreseeability alone." *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.

■ Further, we are not convinced that the incident of November 1980 made the injury to Johnston foreseeable in the sense that

Marsco should have recognized the window grate as presenting an unreasonable risk of harm to children. We believe that inasmuch as the November 1980 occurrence was an isolated incident, involving a common, nondangerous instrumentality, the risk presented, although recognizable, was the kind of event so unlikely to occur that it would commonly be disregarded. See *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619, quoting W. Prosser, Torts §31, at 146 (4th ed. 1971).

■ Finally, we acknowledge Johnston's argument that an instrumentality, in and of itself nondangerous, may become dangerous to children because of the surroundings or circumstances (*Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 383 N.E.2d 177) or when joined with other nondangerous instrumentalities. (See *Novak v. C.M.S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 404 N.E.2d 918.) We believe, however, that this principle is limited to those situations in which the defendant controlled the instrumentalities, circumstances, or surroundings, which in combination became dangerous, or created or contributed to the allure of a condition, such as the sandpiles in *Halloran* that habitually attracted children. In the case at bar, Johnston has not alleged either that Marsco Manufacturing was in control of the instrumentalities or circumstances which combined to cause Johnston's injury or that children were habitually attracted to climbing the window grate.

Because we do not believe the present case is "on all fours" with *La Salle*, and Johnston has not otherwise established that Marsco owed him a duty, the decision of the trial court is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.