THIRD DIVISION

MAY 31, 2000

No. 1-98-4161

KENNETH P. CALHOUN, JR., a minor, by his) Appeal from the

mother and next friend VERONICA CALHOUN ) Circuit Court of

) Cook County.

Plaintiff-Appellant,
 )

)

v. )

)

THE BELT RAILWAY COMPANY OF CHICAGO, a )

corporation, the NORFOLK AND WESTERN )

RAILWAY COMPANY, and CRL RAILROAD, )

INC., F/K/A CHICAGO RAIL LINK, A/K/A )

CHICAGO RAIL LINK RAILROAD, ) Honorable

) Jacqueline Cox,

Defendants-Appellees.
 ) Judge Presiding.

JUDGE CERDA delivered the opinion of the court:

In June 1992, Kenneth P. Calhoun, then a minor, was severely injured when his left foot was caught under a freight train as he was playing upon a railroad right-of-way in Chicago, Illinois.  As a result, the lower portion of Kenneth's left leg was amputated.  The train involved, which was owned and being operated by the Consolidated Rail Corporation (Conrail), was traveling on a set of tracks owned by Belt Railway Company (Belt).

Plaintiff, Veronica Calhoun, as Kenneth's mother, filed a negligence action on her son's behalf seeking damages against Belt and two other railroad companies, defendants Norfolk and Western Railway Company (Norfolk) and Chicago Rail Link Railroad (CRL) (collectively referred to as "defendants"), both of which owned and operated tracks upon the right-of-way where Kenneth was injured.  Pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 1998)), defendants moved for summary judgment, arguing in part that they owed no duty of care to Kenneth because neither the property nor instrumentality involved were under their ownership or control at the time of the accident.

Shortly after defendants' motions were filed, plaintiff reached a settlement with Belt.  Following arguments, the circuit court granted defendants' motions and dismissed plaintiff's claims against them.  Plaintiff now appeals, arguing genuine issues of material fact exist as to whether Norfolk and CRL owed Kenneth a duty of care under the circumstances and that such factual issues should have precluded summary judgment.  For the following reasons, we affirm.

BACKGROUND

The record establishes the following undisputed facts for our review.  The area of the right-of-way in which Kenneth was injured consists of six sets of railroad tracks running parallel to one another and diagonally in a general east-west direction between Cottage Grove Avenue and King Drive in Chicago.  The right-of-way is elevated from street level, located atop a sloped embankment, and is primarily bordered by residential neighborhoods on both its north and south sides.

The southernmost set of tracks is owned and maintained by CRL (sometimes referred to hereinafter as "Track 1").  The next two sets of tracks immediately north are owned and maintained by Norfolk (sometimes referred to hereinafter as either "Track 2" and "Track 3").  The three most northern sets of tracks are owned and maintained by Belt (sometimes referred to hereinafter as either "Track 4," "Track 5," and "Track 6").
(footnote: 1)  Belt's tracks are separated from the tracks of Norfolk and CRL by a roadway that runs east-west along the right-of-way.  The record does not disclose the ownership of the embankment land and does not reveal defendants' relationship to this property.

Traveling approximately a mile east of the accident site, the tracks converge, intersect and/or split in different directions in an area commonly known as "Pullman Junction."  Pullman Junction serves in part as a switching area for the railways' trains, enabling them to cross over the tracks of other companies so they can proceed in a desired direction.  At times, trains are stopped on the surrounding tracks as other trains are passing through the switching area.  While waiting for switching signals, these stationary trains, depending on their number of cars, may extend for a considerable distance along the tracks of the right-of-way.

The record reveals Belt's southernmost track, Track 4, as well as the tracks owned by Norfolk, split south and intersect CRL tracks and switches at Pullman Junction.  By several operating agreements, Norfolk is granted use of CRL's tracks at the junction.  Norfolk is further responsible for the switching of Norfolk and CRL trains on the CRL tracks.  This responsibility encompasses the exclusive control of regulating the train movement on the CRL tracks in that area.  The record does not show whether Belt enjoyed similar access and use of CRL's tracks as that granted to Norfolk.  Furthermore, a separate agreement between Belt and Norfolk allowed Norfolk use of Belt's tracks located on the right-of-way.

The embankment between Cottage Grove and King Drive contains numerous paths, some well worn, leading up to the track area.  The record establishes that for years prior to June 1992 these paths were used by the public as a short cut to the surrounding neighborhoods.  In addition, children used the paths to access the tracks for purposes of climbing and playing on or about train cars.  The area does not contain fences or other such barriers that would inhibit access to the tracks.  The area further contains no signs warning the public of the train activities occurring on the embankment.

At about 8 p.m. on June 15, 1992, Kenneth, then 12 years old, and three of his friends were returning home when they decided to go to the tracks and play.  The boys accessed the track area on the south embankment via a well-worn foot path immediately west of Cottage Grove.  Once atop the embankment, they observed a CRL train, which was stationary on Track 1.  Kenneth and his friends climbed over the CRL train and walked to the middle roadway, proceeding west.

As the boys walked, they noticed a Norfolk train moving toward them on Track 3.  They ran after it in an attempt to climb aboard but were unsuccessful.  The boys continued to walk west on the road until they noticed a Conrail train sitting on Belt's Track 6.  The boys ran over to the Conrail train, climbed upon one of its car, and began to play.

Meanwhile, another Norfolk train was moving slowly westward on Track 2.  The boys jumped off the Conrail train and climbed aboard one of the Norfolk cars as the train passed.  The boys rode the Norfolk train west for a short time, dismounting at a point near King Drive.

Once off the Norfolk train, the boys decided to go home and proceeded down the northside embankment.  When they almost reached an alley below, the boys heard the Conrail train upon which they had been playing starting to move.  The boys ran back up the embankment and followed the train east as it traveled toward Pullman Junction.

While his friends began playing on the train, Kenneth positioned himself between two of the cars and began walking on one of the rails.  Keeping pace with the train's movement, Kenneth told his friends that he was pretending to push the train with his hands.  At that point, Kenneth's right foot slipped off the rail.  While attempting to regain his footing, the lower portion of Kenneth's left leg was crushed under the wheels of the rear car.  Due to the severity of the injury, Kenneth's lower left leg was amputated.

On the date of the accident, neither Norfolk nor CRL owned the set of tracks upon which Kenneth was injured or the Conrail train that ran over Kenneth's leg.  In an affidavit, John Rall, a system engineer for Norfolk, states that Norfolk did not control the set of tracks where the injury occurred, and did not own or control either the north or south embankments.  Rufus Wujcik, a manager of administration at CRL, similarly states that CRL neither operated or controlled Track 6, and explains that CRL did not operate trains on said tracks on the accident date.

ANALYSIS

The purpose of summary judgment under section 2-1005 of the Code is to determine whether there exist any genuine issues of material fact between the parties.  
Hubble v. O'Connor
, 291 Ill. App. 3d 974, 979, 684 N.E.2d 816, 820 (1997).  Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits, present no issue of material fact and show that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998)
; 
Benamon v. Soo Line Railroad Company
, 294 Ill. App. 3d 85, 87, 689 N.E.2d 366, 369 (1997).  Our review of an order granting summary judgment in favor of a party is conducted 
de
 
novo
 (
Benamon
, 294 Ill. App. 3d at 88, 689 N.E.2d at 369 (1997))
, and we will construe all pleadings, depositions and affidavits in a light most favorable to the nonmoving party.  
Soderlund Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1, 7 (1995).  Although a plaintiff is not required to prove her case at the summary judgment stage, some evidentiary facts in support of her cause of action must be presented.  
Helms v. Chicago Park District
, 258 Ill. App. 3d 675, 679, 630 N.E.2d 1016, 1019 (1994).

To succeed on her claims of negligence, plaintiff must establish a duty of care owed by the defendants, the defendants' breach of that duty, and an injury proximately resulting from that breach.  
Rhodes v. Illinois Central Gulf Railroad
, 172 Ill. 2d 213, 227, 665 N.E.2d 1260, 1267 (1996).  The crux of defendants' summary judgment motions is that the evidence fails to show they owed a duty of care toward Kenneth at the time he was injured on Belt's premises.  Whether a duty exists in a particular case is a question of law for the court to decide (
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 446, 605 N.E.2d 493, 498 (1992)), and as such is an issue that may be properly resolved on a motion for summary judgment.  See 
Hanks v. Mount Prospect Park District
, 244 Ill. App. 3d 212, 215, 614 N.E.2d 135, 137 (1993).

The existence of a duty is an inquiry shaped by public policy (
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396 (1987), and requires us to determine whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the benefit of the plaintiff.  
Rhodes
, 172 Ill. 2d at 227, 665 N.E.2d at 1267.  Absent the existence of a duty, the plaintiff cannot recover and the defendant is entitled to judgment as a matter of law.  
Helms
, 258 Ill. App. 3d at 679, 630 N.E.2d at 1019.

Plaintiff asserts the issue of whether defendants owed Kenneth a duty in this case is controlled by the doctrine established by our supreme court in 
Kahn v. James Burton Co.
, 5 Ill. 2d 614, 126 N.E.2d 836 (1955) (the "
Kahn
 doctrine).  The 
Kahn
 doctrine sets forth the standard for determining the liability of an owner, occupier or controller of land to children injured on their premises.  According to the doctrine, liability is to be governed by the traditional rules of negligence, with the measure of fault being the reasonable foreseeability of harm.  
Kahn
, 5 Ill. 2d at 624, 126 N.E.2d at 624-25.  The 
Kahn
 decision brought Illinois law in harmony with section 339 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 339, at 197 (1965))
, effectively abolishing the "attractive nuisance" doctrine as the benchmark of liability and further obviating the need for classifying the child's status as either invitee, licencee or trespasser.  
Cope v. Doe
, 102 Ill. 2d 278, 285-86, 464 N.E.2d 1023, 1027-28 (1984); 
Corcoran v. Village of Libertyville
, 73 Ill. 2d 316, 325-26, 383 N.E.2d 177, 180 (1978).

Under the 
Kahn
 doctrine, a duty will be imposed on an owner, occupier or controller of land to remedy a dangerous condition on the premises or to otherwise protect children from injury resulting from it where (1) the owner, occupier or controller knew or should have known that children habitually frequent the property; (2) a defective structure or dangerous condition was present on the property; (3) the defective structure or dangerous condition was likely to injure children because they are incapable, because of age and maturity, of appreciating the risk involved; and (4) the expense and burden of remedying the defective structure or dangerous condition was slight when compared to the risk created to children.  
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 117, 660 N.E.2d 863, 868 (1995); 
Kahn
, 5 Ill. 2d at 625, 126 N.E.2d at 625; see also Restatement (Second) of Torts § 339, at 197 (1965).  The harm will be deemed sufficiently foreseeable if the owner, occupier or controller knew or should have known that children frequent the premises and if the cause of the child's injury was the dangerous condition on the premises.  
Corcoran
, 73 Ill. 2d at 326, 383 N.E.2d at 180.

Relying on the 
Kahn
 doctrine, plaintiff argues Norfolk and CRL each had a duty 
to protect Kenneth from the dangerous conditions existing on Belt's property, in particular the Conrail train, by deterring or preventing access thereto through the erection of fencing and the posting of warnings on their properties.

A reading of 
Kahn
 clearly reveals that a duty to exercise reasonable care for the protection of children runs only to one who either owns, occupies or controls the land upon which the dangerous condition exists.  Absent ownership, possession or control, no duty arises and liability cannot attach.  See 
Hanks
, 244 Ill. App. 3d at 217, 614 N.E.2d at 138-39 (holding defendant park district could not be held liable under 
Kahn
 for injuries sustained by plaintiff's minor child where
 the injuries occurred on adjacent property); 
Kearns v. Rollins Outdoor Advertising, Inc.
, 492 A.2d 1204, 1206 (Pa. Commw. Ct. 1985) (noting section 339 of Restatement (Second) imposes a duty only upon the owner, occupier or controller of land on which the dangerous condition is located); 
Cousins v. Yaeger
, 394 F. Supp. 595, 605 (E.D. Penn. 1975) (applying Pennsylvania law) (holding section 339 is limited, by its express terms, to dangerous conditions on the land of the possessor and does not apply to adjoining properties);
 
Corcoran v. City of San Mateo
, 265 P. 2d 102, 104 (Cal. App. 1953) (section 339 pertains "solely to conditions existing upon one's own land, not to conditions *** which obtain upon the land of another and over which one has no control").

The undisputed evidence here shows that Kenneth's accident did not occur on property owned or occupied by either Norfolk or CRL.  Furthermore, neither Norfolk nor CRL owned the instrumentality involved in the incident.  In an effort to establish the requisite relationship between defendants and Belt's tracks for purposes of establishing a duty pursuant to 
Kahn
, plaintiff claims Norfolk and CRL controlled Track 6 and the Conrail train at the time Kenneth was injured.

As evidence of defendants' control, plaintiff cites the operating agreements between both Belt and Norfolk, and CRL and Norfolk.  According to plaintiff, these agreements demonstrate Belt, CRL and Norfolk had joint control over the tracks on the right-of-way, including Track 6, as they proceeded east toward Pullman Junction.  In essence, plaintiff maintains the right-of-

way property is under the collective and joint control of all three railroads, and claims the arrangement of the railroads' activities in the area evince "the operation of a 
de
 
facto
, multi-owner, multi-operator train yard."

Contrary to plaintiff's assertion, the operating agreements entered between the railroads do not show defendants' control of Belt's tracks.  Nothing in the agreement between Belt and Norfolk confers upon Norfolk the ability to regulate the movement of trains, whether those of Norfolk or of any other railway company, on Belt's tracks   Rather, Norfolk was simply granted permissive use of Belt's tracks.

The Norfolk-CRL agreement is likewise insufficient to establish the asserted control claimed by plaintiff.  The scope of this agreement is limited to Norfolk's use and control of the CRL tracks at Pullman Junction.  Per the parties' accord, Norfolk, and not CRL, controls the switching conducted on the CRL junction tracks, and its control is limited to the movement of its own trains and the trains of CRL passing at that locale.  Significantly, nothing in the agreement shows that Norfolk or CRL had the authority to control trains operating on Belt's tracks.  Belt is not even a party to the companies' agreement.  Other than plaintiffs' assertions, the record contains no evidence indicating that either CRL or Norfolk was controlling the movement of the Conrail train at the time of Kenneth's accident.

Plaintiff claims the stationary position of the Conrail train on Track 6 immediately before the accident indicates that a train, presumably a Norfolk or CRL train, was passing on CRL's tracks at Pullman Junction.  Plaintiff seems to suggest that the Conrail train began to move once the Norfolk or CRL train completed its passage.  According to plaintiff, Norfolk, by allowing for instance one of its trains to pass through the junction, caused the Conrail train to wait and stop on the tracks in the area of the accident.  In this sense, plaintiff asserts Norfolk was effectively controlling the movement of Conrail's train.  No such claim is made in this regard regarding CRL's purported control of the Conrail train.

Plaintiff cites no evidence showing that a Norfolk or CRL train was indeed passing through Pullman Junction.  Nonetheless, this fact does not establish Norfolk's control of the Conrail train.  Again, the record reveals no evidence of Norfolk's authority to control train movement on Track 6.  Rather, any control attributed to Norfolk over the tracks on the right-of-

way, other than its own, would be limited to the CRL tracks located at Pullman Junction.  The effect of Norfolk's control of CRL tracks at the junction on the movement of trains traveling on Belt's tracks does not amount to control of Belt's property.  Plaintiff's description of the right-of-way area as a "train yard" misses the mark and represents a gross mischaracterization of the area's layout and the nature of train activities occurring on that property.

We find the evidentiary materials relied on by plaintiff insufficient as a matter of law to raise a factual issue as to whether either Norfolk or CRL exercised control over Belt's property and specifically Track 6.  We further find no factual issue regarding defendants' alleged control of the Conrail train on the date of the accident.  Because the evidence fails to show that Norfolk or CRL owned, occupied or controlled Belt's property, the 
Kahn
 doctrine cannot serve as a basis for defendants' liability.

Plaintiff alternatively argues defendants had a duty as adjoining landowners to protect Kenneth from the dangers of the Conrail train by preventing access to Belt's premises.
(footnote: 2)  Plaintiff specifically suggests Norfolk and CRL had the responsibility to erect fences and provide warnings on their land to deter children from accessing Belt's tracks.
(footnote: 3)
We adhere to the rule followed by the majority of jurisdictions that a landowner is under no general duty to erect fencing or provide warnings on their land so as to deter others, particularly trespassers, from entering neighboring property on which exists a dangerous condition not caused or maintained by the landowner and over which the landowner has no control.  See 
McMann v. Benton County, Angles Park Communities, Ltd.
, 946 P. 2d 1183, 1186 (Wash. App. 1997) (owner of mobile home park had no duty to fence its property so as to protect minor tenant from dangers of canal on adjoining land); 
Badou v. New Jersey Transit Rail Operations
, 633 N.Y.S.2d 530, 532 (N.Y. App. Div. 1995) (landowner owed no duty to warn or protect another crossing property of neighboring railroad)
; 
Mair v. C & O Railroad
, 851 F. 2d 829, 833 (6
th
 Cir. 1988) (applying Michigan law) (railroad owed no duty to protect trespassing minor from dangerous conditions on adjoining railroad tracks); 
McKinney v. Hartz & Restle Realtors Inc.
, 510 N.E.2d 386, 391 (Ohio 1987) (no duty imposed on landlord to erect fence between its property and railroad right-of-way); 
Fink v. Baker
, 46 Ill. App. 3d 1061, 1067, 361 N.E.2d 702, 707 (1977) (applying Indiana law) (railroad had no duty to warn or protect public from dangerous condition on adjacent railway property); 
Cousins
, 394 F. Supp. at 605 (applying Pennsylvania law) (no duty of landowner to protect children from abutting railroad tracks); 
Corcoran
, 265 P. 2d at 104 (no duty on landowners to fence vacant lot to prevent minor trespasser from crossing lot and falling into drainage ditch on adjoining property); 62 Am. Jur. 2d., Premises Liability § 185, at 553; 39 A.L.R.2d 1452 (1955); see also 
Johnston v. Illinois Bell Telephone Co.
, 195 Ill. App. 3d 501, 504-05, 553 N.E.2d 11, 13 (1990) (refusing to recognize under Illinois law that a property owner is liable for injury to a child if the owner fails to take reasonable steps to preclude the child from using his property to gain access to a dangerous instrumentality elsewhere, and the owner knows that children are using his property in such a manner).
(footnote: 4)
Claiming Norfolk and CRL created a dangerous condition on Belt's property by allowing Kenneth and other children unfettered access thereto, plaintiff cites 
Halloran v. Belt Railway Company of Chicago
, 25 Ill. App. 2d 114, 166 N.E.2d 98 (1960), 
LaSalle National Bank v. City of Chicago
, 132 Ill. App. 3d 607, 478 N.E.2d 417 (1985), and 
Engel v. Chicago & North Western Transportation Co.
, 186 Ill. App. 3d 522, 542 N.E.2d 729 (1989), as supportive of her assertion of a duty in this case.

In 
Halloran
, the minor, a 13 year-old boy, was severely injured when he slipped and fell under a moving freight train which was traveling on the property of a railroad company located atop an elevated embankment.  Just before his accident, the boy had been playing with friends on a sand pile located on property which was owned by the defendant, Consumers Company, and which adjoined the railroad tracks at issue.  Consumers did not own, possess or control any portion of the property where the tracks were situated.

The boy and his friends had played about Consumers' sand pile several times prior to the accident date, and the evidence showed that Consumers knew of the children's presence.  As the boy played, his companions decided to go home, walking over the adjoining railway properties over which they traversed to reach Consumers' premises.  The boy followed and attempted to persuade his friends to stay and continue to play.  While crossing the adjoining tracks, the boy heard an approaching train.  As he tried to move to safety, the plaintiff fell and was injured under one of the train's cars.

The boy's father filed a negligence suit on his son's behalf against, 
inter
 
alia
, Consumers, and Consumers successfully moved for summary judgment.  The appellate court reversed, finding that Consumers could be found liable despite the fact that it did not own, possess or control the land upon which the boy was injured.  The court explained that under 
Kahn
 "[t]he creator of conditions, dangerous and hazardous to children, because of their immature appreciation of such dangers and hazards, must be held to a standard of conduct for the protection of such children, in accordance with the attendant circumstances."  
Halloran
, 25 Ill. App. 2d at 119, 166 N.E.2d at 100, quoting 
Kahn
, 5 Ill. 2d at 622, 126 N.E.2d at 840.
(footnote: 5)  The 
Halloran
 court extended this rule, finding it could "be reasonably applied so as to render Consumers liable for injuries to children, where it is responsible for the creation of the attraction," 
i.e.
, the sand pile, that allured the boy to the property.  
Halloran
, 25 Ill. App. 2d at 119, 166 N.E.2d 1000-01.  According to the court, a duty arose on the part of Consumers "to exercise due care for [the children's] safety, if they were exposed to danger in the immediate approach to its premises."  
Halloran
, 25 Ill. App. 2d at 119, 166 N.E.2d at 101.

Notably, the court focused on the "attraction" created by the sand pile.  Citing early-1900 case law applying the "attractive nuisance" doctrine, the court stated "the attractiveness of the premises or the instrumentality is an important and controlling factor."  
Halloran
, 25 Ill. App. 2d at 119, 166 N.E.2d at 101.  The court further did not address the danger, if any, represented by the sand pile itself, but rather examined the surrounding area, stressing that the boy, although about 30 feet away from the pile when he was injured, "was still in the same dangerous environment into which he had been attracted and allured by the sand pile."  
Halloran
, 25 Ill. App. 2d at 120, 166 N.E.2d at 101.

In this case, plaintiff argues the attractions on defendants' properties, 
i.e.
, their trains, lured Kenneth to their land and to the train activities taking place on Belt's tracks, thereby subjecting Kenneth to a dangerous environment similar to that created by Consumers in 
Halloran
.  We find 
Halloran
 unavailing.

T
he facts in 
Halloran
 showed that the minor boy maintained a certain relationship to the defendant's land when he was injured.  In particular, the child had not left the embankment area but remained in close proximity to the property.  Moreover, the boy was attempting to persuade his friends to stay and play on the sand pile and thus had the primary, if not sole, aim of continuing to play on the defendant's premises.

Conversely, Kenneth did not maintain such a relationship with defendants' properties in this case.  Indeed, after frolicking about the CRL and Norfolk tracks, Kenneth and his friends left the elevated right-of-way area to go home, traveling down the north embankment almost to an alley below.  The boys returned to the right-of-way only because they heard the Conrail train on Belt's track beginning to move.  In returning, Kenneth and his companions had the single purpose of playing on Belt's property, and significantly, as the evidence clearly shows, they were not returning, and had no intentions of returning, to either of defendants' tracks.

In addition to finding 
Halloran
 factually distinguishable, we find the case 
to be a legal anomaly.  A careful reading reveals that the 
Halloran
 court relied heavily on the "attractive nuisance" doctrine despite its abrogation five years earlier in 
Kahn
.  Indeed, central to the court's decision 
was the sand pile's attractiveness, which the court deemed an "important and controlling factor" and which it found could have "attracted and allured" the boy and his friends to the defendant's premises.  
Halloran
, 25 Ill. App. 2d at 120-21, 166 N.E.2d at 100-101.  As the supreme court has noted, 
Kahn
 discarded the notion that the dangerous condition had to lure or entice children onto the premises, and held that the attraction of the condition no longer serves as the predicate for a finding of liability.
  A condition's attractiveness is now only relevant in determining whether the presence of children on the land was foreseeable.  
Cope
, 102 Ill. 2d at 285, 464 N.E.2d at 1027.  Due to the
 emphasis on both the attractiveness of the property and its resultant effect of enticing children, we find the decision in 
Halloran
 to be a departure from Illinois law and, consequently, not supportive of plaintiff's position here.

We find 
LaSalle
 and 
Engel
 equally unavailing.  In 
LaSalle
, a minor child was injured while attempting to jump onto a moving train that was traveling on railroad tracks owned by Conrail.  The minor gained access to the track area by climbing through a hole in a fence owned and maintained by the City of Chicago.  The fence, which had been erected pursuant to an agreement between the City and Conrail's predecessor, was situated on the site of a public elementary school, and separated the school premises from the railroad's tracks.  An engineering firm hired to conduct annual inspections of the property advised the City of the fence's defects and repeatedly recommended to the City that the hole be repaired.

LaSalle National Bank, as the minor's representative, brought suit against Conrail and the City alleging negligence.  On appeal from a jury verdict in favor of the minor, the City argued it owned no duty of care as an adjacent landowner, and specifically contended that the principles enunciated in 
Kahn
 regarding the degree of care owed children by creators of dangerous conditions upon land were inapplicable because the minor was not injured on city property, but on adjoining property owned by Conrail.

The appellate court rejected the City's contention, holding that under 
Kahn
 the "City could properly be found to have 'created' or contributed to a hazardous condition even though [the] City did not own the property upon which the dangerous instrumentality was located."  
LaSalle
, 132 Ill. App. 3d at 613, 478 N.E.2d at 421.  In support of its holding, the court stressed that the City had a contractual duty to maintain the fence on its property, that the City had allowed the fence to remain in disrepair for a lengthy period of time prior to the accident, and that the City had notice of the children's frequent use of the hole to access the tracks  
LaSalle
, 132 Ill. App. 3d at 613, 478 N.E.2d at 421.  On the foregoing basis, the court concluded the City could have been found to have owed a duty of care to protect the minor child from the hazards presented by Conrail's trains.  
LaSalle
, 132 Ill. App. 3d at 615, 478 N.E.2d at 421.

Similarly, in 
Engel
, a twelve-year boy sued the Chicago Park District for injuries sustained when he jumped from a moving freight train.  Prior to the accident, the boy had been playing with friends at a public park operated by the Park District.  The entire park was fenced, and for about two years prior to the boy's injury the west-side fencing, which bordered the railroad tracks in question, contained a large opening.  This opening allowed children playing in the park direct access to the track area.  Despite its knowledge of the opening, its belief that the opening presented a dangerous situation, and its awareness that children used the opening to access the tracks, the Park District did not undertake any repair measures.

On appeal from an adverse jury verdict, the Park District contended it owed no legal duty to the minor boy.  The appellate court explained that under 
Kahn
 a duty will be imposed upon an owner, occupier or controller of land where it knows or should know children frequent the premises and "if the cause of the child's injury was 
a 
dangerous
 condition on the premises."  
Engel
, 186 Ill. App. 3d at 529, 542 N.E.2d at 733.  (Emphasis in original.)  Because the Park District knew that children frequently used the opening to reach the tracks, and believed itself that the opening presented a dangerous condition to them, the court held that the Park District had a duty to repair the fence to prevent access to the railroad tracks.  
Engel
, 186 Ill. App. 3d at 529, 542 N.E.2d 733-34.  

The facts determinative of the duties imposed in the foregoing decisions 
are not present in this case.  Unlike the City in 
LaSalle
, neither Norfolk nor CRL were under any contractual duty at the time of Kenneth's accident to prevent access to Belt's property through the erection and maintenance of a fence which was allowed to fall in disrepair, which was known to be used by children to access Belt's tracks, and which was repeatedly urged to be repaired.
(footnote: 6)  Moreover, unlike the Park District in 
Engel
, Norfolk and CRL did not own and maintain a defective fence on their property that allowed, to their knowledge, children to access Belt's tracks.  
Significantly, the properties involved in 
LaSalle
 and 
Engel
 were owned and controlled by municipal corporations and specifically devoted to the use by the public and particularly children.  Conversely, the property involved here is owned by private entities and used in a proprietary manner unrelated to the public's use.

CONCLUSION

Because neither Norfolk nor CRL owed Kenneth a duty of care at the time he was injured on Belt's premises, summary judgment was properly granted in their favor.  Accordingly, the order of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and WOLFSON, concur.

STATE OF ILLINOIS

APPELLATE COURT

FIRST DISTRICT

INTER-OFFICE MEMORANDUM

TO: Justice Cerda DATE: May 15, 2000

FROM: Paul W. Doerscheln

RE: 
Calhoun v. Belt Railway

1-98-4161

Oral held 2/22/00

CERDA, Cahill, Wolfson

I was able to one page so that the draft presently stands at 24 pages.  I believe we should keep the discussion on pages 12 and 13 of the original draft since plaintiff stresses this point in her briefs.  I was able to refine this part so as to cut down on its length.

Additionally, on the issue of whether the plaintiff reached the alley after leaving the right-of-way, my review of the record shows that the matter is unclear.  Plaintiff was never asked if he reached the alley, and his statements on this point are ambiguous.  Thus, it is probably best to state that plaintiff and his friends "almost" reached the alley as your revisions suggest.

Please contact me if you have any questions and/or thoughts.

FOOTNOTES
1:
Unless otherwise specifically designated, these right-

of-ways will be collectively referred to as the "tracks."

2:
We note that neither Norfolk nor CRL can be properly classified as adjoining landowners of Belt's property on the record before us.  The evidence shows Belt's property is abutted by the service roadway, and that this roadway separates the properties of Belt and defendants.  The record does not disclose the owner of the roadway, and there is no evidence that either Norfolk or CRL occupied or exerted control over this strip of land.  In any event, 
even if defendants could be considered adjacent landowners, we would nonetheless find no duty as a matter of law.

3:
On appeal, plaintiff intimates at times that such fencing and warnings should have been placed on the north and south embankments leading up to the track area.  The record, however, does not show that Norfolk or CRL owned, occupied or controlled this land.  Although Norfolk and CRL have admitted owning certain portions of land on the right-of-way, neither defendant has admitted ownership or control of either embankment.  The law does not recognize a duty on the part of a property owner to fence the land of another (
Miller v. Chicago & N.W. Ry. Co.
, 347 Ill. 487, 494, 180 N.E.2d 454, 456 (1932), or to post warning signs thereupon
.  Plaintiff's bare assertions concerning defendants' ownership and control are insufficient at this stage to support such a finding.

4:
We are aware of this court's decision in 
Foreman v. Consolidated Rail Corp
, 214 Ill. App. 3d 700, 706, 574 N.E.2d 178, 181 (1991), in which we recognized the possibility of imposing a duty on a landowner to protect minors from dangers existing on neighboring premises.  The landowner involved in 
Foreman
 was the City of Chicago, a municipal corporation, and our opinion addressed whether the City should have been held to a duty of preventing children access to neighboring railroad tracks under the circumstances.

We find the status of the landowner in 
Foreman
 significant, and read that decision as applying strictly to cases, unlike here, where the adjoining landowner in question is a public entity.  Notably, the 
Foreman
 court found no duty on the part of the City, and it explicitly observed that its holding was consistent with the majority rule that adjacent landowners have no duty to fence property located next to a railroad.  
Foreman
, 214 Ill. App. 3d at 706-09, 574 N.E.2d at 183 (citing cases).

We are further aware of those Illinois cases that have recognized a duty on the part of a railroad in certain instances to erect fencing or similar barriers to secure its property from children.  See 
Pellegrini v. Chicago, Rock Island and Pacific Railroad Co.
, 91 Ill. App. 3d 1091, 1095, 415 N.E.2d 615, 618 (1980) (in reviewing grant of summary judgment in favor of defendant railroad, the court held that questions of whether railroad was negligent for failing to fence its right-of-way, which children frequently accessed, and whether this non-action was a proximate cause of plaintiff's injuries, was for jury); 
Dickeson v. Baltimore & Ohio Chicago Terminal, R. R. Co.
, 73 Ill. App. 2d 5, 22-24, 220 N.E.2d 43, 51 (1965) (finding under circumstances of case that defendant railroad had a common law duty to take steps to close their right-of-way, be it by fencing or otherwise, to minor child who was injured by railroad's train).  The railroads in the above cases importantly owned or controlled the land upon which the injury occurred, and the matter of whether such measures were required to keep children from entering adjoining land was not addressed by those courts.

5:
In addition to delineating the standard of care owed children by owners, occupiers and controllers of land, the supreme court in 
Kahn
 also addressed the duties owed by creators of dangerous and hazardous conditions on property.  There, the minor plaintiff had been injured while playing on a pile of lumber that had been placed on the land by a lumber company.  The minor's parents brought suit against the lumber company, alleging negligence in the condition of the lumber pile.  The 
Kahn
 court rejected the lumber company's argument that it owed no duty because it did not own, occupy or control the land in question.  The court stated that a duty of reasonable care is imposed on the creator of dangerous conditions on property, whether or not it owns, occupies or controls that land, to protect children, where the children's immaturity prevents them from appreciating the danger presented, and where it is foreseeable under the circumstances that children could be injured by the condition.  
Kahn
, 5 Ill. 2d at 622, 126 N.E.2d at 840.  The court held liability could attach in the case if the company "could have reasonably anticipated the likelihood that children would climb onto the lumber and would be injured[.]" 
Kahn
, 5 Ill. 2d at 622-

23, 126 N.E.2d at 840.

6:
We note the 
LaSalle
 decision has been limited to the facts and circumstances presented in that case.  See 
Johnston
, 195 Ill. App. 3d at 504-05, 553 N.E.2d at 13 (noting the "
LaSalle
 court specifically limited its holding to the narrowly drawn circumstances of the case" and declining to "generalize the holding of 
LaSalle
 beyond the scope delineated by that court")